## Case No. 2,864.

### CLARKE v. STRICKLAND et al.

[2 Curt. 439.][1]

Circuit Court, D. Maine. Sept. Term, 1855.

TAXATION—LEVY—FORFEITURE FOR NONPAYMENT—WAIVER.

1. Whether an uninhabited township of land, owned in severalty by different proprietors, was rightfully included in a tax act, which made no provision for a valuation of the land of the different owners, and an apportionment of the tax as is required by the constitution of the state of Maine (article 9, § 8), quaere.

[Cited in Hodgdon v. Burleigh, 4 Fed. 117.]

2. If the tax was legal and the land forfeited for the non-payment of the same, the forfeiture was waived by the levy of another tax, after the title of the state had become perfect under the forfeiture.

[Cited in Hodgdon v. Burleigh, 4 Fed. 127.]

3. A subsequent act of the legislature, giving further time for the payment of the tax, was also a waiver of the forfeiture, at least so far that a title under a tax sale must be made under this law.

4. If the county commissioners, in levying a tax, assess a larger sum than is granted by the legislature, it renders the whole tax void.

5. All the proceedings directed by statute for enforcing a forfeiture must be strictly followed.

6. The treasurer, in advertising the delinquency in this case, gave as the sum due the whole amount including the county tax. This was a fatal defect in the proceedings. The county tax being illegal, was not due.

7. The land agent is directed to sell the land, and he sold all the right, title, and interest of the state in and to the land. This is a different thing from the sale of the land itself.

At law. This was a suit [by Joseph W. Clarke against Hastings Strickland, and others] to recover a certain tract of land, part of number 2, range 12 west from the east line of the state, in the county of Piscataquis, particularly described by metes and bounds in the writ. It was admitted for the purpose of this hearing that the demandant's title was good, unless it had been divested by a forfeiture to the state, and by a legal sale for non-payment of taxes. The forfeiture claimed was for the non-payment of

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

the tax to the state and county, for the years 1842, 1843, and 1844. By the Revised Statutes [Me. 1840-41, p. 87] c. 14, § 9, if any taxes imposed by the legislature on any township, or tract of land not taxable by the assessors of any town or organized plantation are not paid within four years from the passing of the act making the assessment, the land shall become forfeited to the state.

Mr. Rowe, for plaintiff.
Mr. Shepley, for the tenant.

WARE, District Judge. The first objection urged for the demandant against the tenant's title is, that this township is not rightfully included in these tax acts. They purport to levy a tax on "cities, towns, plantations, and other places," and one sixth of the tax is to be assessed by the assessors on polls. As this was an uninhabited township, it had no assessors, by whom the tax could be assessed, and no polls, on which it could be imposed. If, however, the difficulty, with regard to the capitation tax could be overcome, another remains not so easy to be removed. The township belonged to several owners, not owning in common, but holding in severalty, and by the constitution of the state, art. 9, § 8. "All taxes on real estate assessed by the authority of the state shall be apportioned and assessed equally, according to the just value thereof." But in this township, there were no assessors, by whom the valuation could be made, and no mode of making a valuation and apportionment is provided by the law, so that the tax must be levied on all the different proprietors pro rata, according to the quantity owned by each, without regard to the relative value of the different lots, though there might probably be a wide difference in this respect between them. On this ground it is contended that by the true construction of these tax acts, taking the constitution for our guide in interpreting them, they do not extend to and include uninhabited townships and tracts of land owned by different proprietors in severalty, as this was; but that when the acts mention cities, towns, plantations, and other places, these last descriptive words must be confined to places ejusdem generis, that is to places that have a municipal organization, so far at least as to have assessors, by whom the tax can be constitutionally apportioned.

The question thus raised, is evidently one of much practical importance, and as it appears to me of no inconsiderable delicacy, but as it involves a construction of the constitution and statutes of the state, it is more fit to be submitted in the first instance to the state tribunals than to this court, and as it is not deemed necessary to be decided in this case, it is passed.

In the second place it is contended, that if there has been a forfeiture, it has been waived by the state. If there has been a forfeiture, it was for the non-payment of the taxes assessed in the years 1842, 1843, and 1844, and in each case, it became perfect in four years from the time when the taxes were respectively levied. But the state continued to levy and assess taxes on this land, after the time when their title is supposed to have become perfect by forfeiture. It is not the practice of the state to impose a tax on its own property. Such an act would amount only to an unmeaning and expensive formality, so far as the tax was for the benefit of the state. It is argued therefore, that the imposition of a tax, after the supposed forfeiture, affords a conclusive presumption, either that there had been no forfeiture, or if any had accrued, that it was waived and remitted, otherwise it is said, that we must suppose it to have been the intention of the state, to extract from the former owners of the land, a tax levied after they had been divested of their title and it had become invested in the state itself, an imputation on the good faith of the state, equally indecent and untrue.

In reply it is said, that this very question was before the supreme court of the state, in the late case of Hodgdon v. Wright, 36 Me. 327, and that it was there decided that in such a case there was no waiver of the forfeiture. I do not understand the decision, precisely as it is understood by the tenant's counsel. The language of the court is: "The state does not appear to have insisted on forfeitures, when it could obtain payment without. Such a course of proceeding (that is, the levy of a tax after a forfeiture), might perhaps be properly considered as a pledge that the owner would be permitted to redeem." If it was such a pledge, it appears to me to be nothing less than a remission of the forfeiture, or if not an unqualified remission, at least an engagement, that it should not be enforced without further proceedings and notice. The legislature, it seems to me so to have understood it. The act of August 10th, 1848, c. 65 [Laws Me. 1848, p. 56], directs the treasurer of the state, within sixty days after the approval of this act, to publish a list of all tracts of land forfeited to the state, for the non-payment of taxes, specifying the amount of taxes due on each, and the time allowed by this act to pay the same, in certain newspapers named in the act. The second section authorizes the owner of land that had before become forfeited, to pay into the treasury the tax and other charges before the first day of the ensuing March, and provides that the treasurer's receipt shall discharge the land. The third section directs the treasurer, to furnish the land agent with a list of all tracts and townships of land, that had been advertised according to the direction of the first section, with the amount of tax, and charges thereon, who within sixty days, shall sell the same, after giving notice of the time of sale for

three weeks in the manner pointed out by the act. This act appears to me to be a complete waiver of all prior forfeitures, and includes the land now in controversy. By a compliance with its terms, the owner becomes perfectly reinstated in his former rights. The land may again become forfeited by a non-compliance with its terms. If, however, it be considered as a conditional and not an absolute waiver and remission, and so the title in this case be considered ultimately to rest on the old forfeiture, it will still remain true, that whatever title the tenant derived from the sale must have its foundation in this law, because it was under the authority of this, that the sale was made.

The counsel for the demandant contends, that the proceedings of the state authorities to enforce the forfeiture were not in conformity with the law, but were in some respects fatally defective, so that either no title passed to the purchaser, or if any, only a defective title, which was liable to be extinguished by the repayment or tender of what the purchaser paid, and it was admitted that such a tender had been made.

One objection to the proceedings of the state authorities is, to the treasurer's advertisement. He is directed to specify in his advertisement the amount of taxes due, and he gave as the sum the whole amount, including the state and county tax. But in each year the county commissioners made an overlay, and assessed an amount beyond the grant of the legislature. The tax granted in 1842 was $3,620, that assessed by the county commissioners was $3,631.32; in 1843, the tax authorized was $3,000, that assessed was $3,076.32; and in 1844 the authorized tax was $3,560. and that assessed, $3,591.34. The assessors of towns and plantations are authorized to make an overlay to an amount not exceeding five per cent., but no such power is intrusted to the county commissioners. All the authority they had for levying any tax was derived from the statutes, and these limited them to the precise amounts named in the respective acts. The additional tax imposed by them was an excess of power that rendered the whole tax void, so that the state tax was all that was legally due. Such is the settled rule of jurisprudence. Stetson v. Kempton, 13 Mass. 272; Libby v. Burnham, 15 Mass. 144; Joyner v. Egremont School Dist., 3 Cush. 569. The object of requiring the treasurer to name the sum due is, to give notice to the owners of what they have to pay to redeem their land, and the stating in the advertisement a false sum is equivocal to giving no notice. It is insisted by the counsel for the plaintiff, that this is a fatal defect in the proceedings, that renders the defendant's title void. And the court is of this opinion.

Another objection is, that the land agent, by his advertisement, and sale pursuant to it, advertised and sold, not the land itself, but all the right, title, and interest which the state had in and to the land. The language of the act of 1848 is:—"The treasurer shall furnish the land agents with a list of all the tracts and townships of land, which have been advertised as is provided in this act, &c. And the land agent shall sell the same at auction," &c.,—that is, he shall sell the tracts or townships of land, and not the right or interest which the state has in them. These are, or at least may be, very different. The interest of the state may be the land itself, or it may be a lien upon it for what is due to the state for taxes. Rev. St. c. 14, § 2.

It is a familiar principle of jurisprudence, applicable to such cases, that he who would defend a tax title must be prepared to show that all the requirements of the statute, which provide a forfeiture and sale of any land for the non-payment of taxes, have been strictly complied with. Such titles, by which proprietors are deprived of their property usually for a mere fraction of its value, and often by surprise and without their knowledge, are not favored by the law. And therefore, as was observed by Chief Justice Whitman, (Brown v. Veazie, 25 Me. 362). "Great strictness is to be required, and it must appear that the provisions of the law preparatory to and authorizing such sales have been punctiliously complied with;" and he proceeds to commend the counsel for their astuteness, in scrutinizing the proceedings of the officers in that case. But this last objection is hardly open to the criticism of being inter apices juris. It rests on a substantial foundation of justice and equity. The fourth section of the act of 1848, provides that the owner of the lands at any time within three years after the sale, on producing evidence to the treasurer of his ownership, shall be entitled to receive back the balance of the price, for which the land was sold, after deducting the taxes and other charges. He has therefore, an equitable right before his title is extinguished, to have the land sold on the most favorable conditions, being interested in the surplus. A sale of the right, title, and interest of a party, naturally suggests to bidders a clouded title; it implies a doubt of the vendor as to the extent of his interest, and cannot be expected to sell for so much as would be given for the land itself. In the present case, the price paid by the purchaser was only the exact amount of the taxes and charges.

The opinion of the court is, that the demandant is entitled to recover.