## JONATHAN BOYCE v. GEORGE SEBRING.

*Taxation—Apportionment of State and county taxes—Equalization by board of supervisors—Certificate of chairman—Excessive levy—Presumption of legality of tax—Constitutional law—Title of act.*

1. The provisions of How. Stat. § 1031, requiring the board of supervisors to *ascertain* and *determine* the amount of money to be raised by tax for *county* purposes, and apportion *this,* and the amount of *State* tax required to be raised, among the several townships in the county, in proportion to the equalized valuation of the taxable property therein, are mandatory, and such determination and apportionment must be entered at large upon their records.[1]

2. In making such record it is not necessary that the word "apportion" be used, or any particular form adopted; but it is sufficient if it appears that the *just* share of the amount to be raised for State and county purposes is distributed among the several townships

---

[1] How. Stat. § 1030, provides for the apportionment by the Auditor General of the *State* tax among the several counties, and makes it his duty to transmit to the several county clerks, before the October session of the board of supervisors, the amount of tax so apportioned; which statement it is the duty of the clerk to lay before the board at said session.

3. Where the proper committee reported the amount necessary to be raised for county expenses, stating the amount needed for different objects, which report was adopted by the board of supervisors, and afterwards certain salaries were raised, and the increase added to the *aggregate* amount reported by the committee,—

*Held*, not to affect the validity of the tax.

4. The certificate of equalization by the chairman of the board is no part of the assessment roll, and need not be copied into the tax roll delivered to the treasurer.[1]

5. Where a committee equalized the several assessment rolls of the county, and made a report of their action to the board of supervisors, which was adopted,—

*Held*, that this made the action of the committee that of the board, and was sufficient under the statute.

6. The record of a board of supervisors of its action in equalizing the several assessment rolls of the townships consisted of a tabular statement embracing *all* of the townships in the county, and giving under the headings "Real as assessed," "Personal," "As equalized," "Added to," and "Deducted from," the valuation of the real estate as assessed, and of the personal property as assessed, followed by the aggregate of *both* plus the amount added or minus the sum deducted, as the case might be, followed by the amount of such additions or deductions, *all* under the appropriate headings.

*Held*, that there was no ambiguity in the record, which was sufficiently definite for all purposes.

7. How. Stat. § 1027, contemplates that the additions or deductions made by the board of supervisors in equalizing the assessment rolls of the townships will be added to or deducted from the *aggregate* valuation of *all* of the taxable property in the township.

8. The decision in *Robbins v. Barron*, 33 Mich. 124, is approved.

9. The title to Act No. 106, Laws of 1851, namely, "An act to provide for a State Board of Equalization," covers a section providing for the equalization of the assessment rolls of the several townships by the board of supervisors of the respective counties preparatory to action by such State Board of Equalization.

10. Where the board of supervisors equalized the assessment rolls of the several townships at their June session. preparatory to the

---

[1] See How. Stat. § 1025, and compiler's notes, as to supervisor's certificate of assessment. Section 19 of Act No. 9, Laws of 1882, and of Act No. 153, Laws of 1885, substitutes the indorsement of the board of review for the certificate formerly required, and declares that the omission of such indorsement shall not affect the validity of the roll.

meeting of the State Board of Equalization, as provided in How. Stat. § 324,—

*Held*, that a failure to go through with the formality of another equalization in October was not fatal to a tax deed issued on a sale for taxes delinquent for that year; citing *Silsbee v. Stockle*, 44 Mich. 565, approvingly.

11. The ground upon which excessive tax levies are held to invalidate a tax deed is that they are unauthorized, and that the officer has no jurisdiction to make the same; and where such a levy is made upon the taxable property contained in the *whole* roll, the *entire* roll is invalidated.

So *held*, where an *excess* of $3.01 of two-mill tax was levied upon the property of a township.

12. Where the record of the board of supervisors showed that $150 was authorized to be raised for township purposes, but the sum of $310.97 was levied, as appeared by the supervisor's warrant,—

*Held*, that, in order to overthrow the statutory presumption in favor of the legality of the tax, the party claiming the contrary must introduce the township records to show that the amount levied for township purposes was unauthorized.

13. Where the only evidence of the apportionment of the State tax among the several townships in a county was the including by the clerk of a certain sum for that purpose in his certificate to the supervisor, under How. Stat. § 1032,—

*Held*, insufficient, and that a tax deed issued on a sale of land for such tax was void.

Error to Osceola. (Judkins, J.) Argued April 14 and 15, 1887. Decided June 9, 1887.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*More & Wilson*, for appellant.

*C. H. Rose* (*C. M. Beardsley*, of counsel), for defendant.

CHAMPLIN, J. This is an action of ejectment. The defendant relies upon deeds from the State of Michigan executed by the Auditor General for the taxes delinquent for the years 1875, 1876, 1878, and 1880. The judgment in the court below was in favor of the defendant, and plaintiff brings the case here by a writ of error.

Nine errors are assigned. The first is that the court erred in admitting in evidence the State tax deed for the taxes of 1875, and the fifth assignment is that the court erred in holding and deciding that the taxes on the lands in question for 1875 were properly levied, and that defendant's deed of said land for the taxes of 1875 was valid.

The deed is claimed to be invalid for the following reasons:

1. No apportionment of either State or county tax was made by the board of supervisors.

2. The board of supervisors did not "ascertain and determine the amount of money to be raised by tax for county purposes" in 1875.

3. The certificate of the chairman of the board of supervisors required by section 29 of the tax law (How. Stat. § 1029) was not appended to the assessment roll of the township of Orient for 1875.

4. The tax levied on this land, and for which it was sold, was excessive, because the sum of $498.73 highway tax, spread on the roll of Orient township for 1875, and included in the supervisor's warrant, was not authorized by the board of supervisors, and was not certified to the supervisor of Orient by the clerk of the board of supervisors, as required by sections 31 and 32 of the tax law.

5. The certificate of the clerk of the board of supervisors shows that $250 was to be raised in Orient in 1875 for township purposes, while the supervisor's warrant shows that $275 was levied, an excess of $25, about one-thirtieth of the whole amount raised in the township.

6. There was no equalization of the assessment rolls of the several townships of Osceola county for 1875.

7. The taxes raised in Orient township for township purposes, in 1875, were unauthorized, because no action was taken by the board on these taxes, as required by section 31 of the tax law.

The objections will be considered separately, and in the order stated.

The requirements of section 31 are mandatory.[1] The board of supervisors must ascertain and determine the amount of money to be raised by tax for county purposes,

---

[1] How. Stat. § 1031.

and to apportion this, and the amount of State tax required to be raised, among the several townships in the county, in proportion to the valuation of the taxable property therein, for one year, as equalized by the board; and this determination and apportionment must be entered at large upon their records.

It appears from the records of the board of supervisors for the year 1875 that the total valuation of the taxable property in the county, as equalized by them, was $1,888,542, and that the valuation of the taxable property in the township of Orient was $130,147. Their records also show the equalized valuation of each township in the county. It also appears of record that the total amount of money to be raised for county purposes was ascertained and determined to be $10,-250, and the amount of State tax apportioned to the county was $736.34.

There appears of record an itemized statement of taxes to be raised in each township in the county; and in that pertaining to Orient township were the following items relative to State and county tax, viz.: State tax, $50.75; county tax, $706.32. The following also appears in the proceedings of the board of supervisors:

"On motion of Supervisor Moulton, the amount of State tax, $736.34, reported by the Auditor General to the clerk of the board of supervisors to be raised in the county, was authorized to be spread upon the assessment rolls of the different townships."

Following the statement of the several amounts to be raised by tax in Orient township appears the following:

"On motion of Supervisor Delamarter, the supervisor of the township of Orient was authorized to spread upon the assessment roll of said township the several taxes, as appears by the statement above;"—

Which was adopted, by an aye and nay vote, unanimously.

The question is, does this record comply with the statute? The determination of the amount of money to be raised by

tax for county purposes was entered at large upon the record. The proportion of State and county tax required to be raised in the county, according to the valuation of the taxable property therein, as equalized by the board of supervisors, appears of record in the tabulated statements of taxes to be raised in each town. The apportionment consists in ascertaining by a mathematical computation what part of the State and of the county tax each township shall raise. The law lays down the ratio, and says that the apportionment shall be in proportion as the total equalized valuation of the taxable property in the county is to the equalized valuation of the taxable property in the township, so is the whole amount to be raised to the amount to be raised in each township. The result is the amount to be apportioned; and the apportionment is the distribution of this amount so ascertained as the just share to each township. It is the *latter* which the law requires to be entered at large upon the record, and not the calculation which led to the result. Nor is it necessary that the word "apportion" be used, or any particular form adopted. It is sufficient if it appears of record that the just share of the amount to be raised for State and county purposes is distributed among the several townships to be raised by taxation. The statute appears to have been complied with by the board of supervisors, and this reason for declaring the deed invalid must be overruled.

The second point is not tenable. The committee on ways and means reported the amount necessary to be raised for county expenses the coming year, stating in the report the amounts necessary for different objects, aggregating $9,850. This report was adopted. Afterwards the salaries of the judge of probate and prosecuting attorney were increased, and $400 added to the above amount.

The third objection cannot be sustained, for the reason that it does not appear that the assessment roll was not prop-

erly certified. The tax roll was put in evidence, but not the
assessment roll. It has been held by this Court that the cer-
tificate is no part of the roll, and need not be copied into the
tax roll delivered to the collector. *Sibley v. Smith,* 2 Mich.
486, 502; *Tweed v. Metcalf,* 4 Id. 579; *Clark v. Axford,* 5
Id. 182, 187; *Bird v. Perkins,* 33 Id. 28.

The fourth objection is to the sum of $498.73 for a high-
way tax, which was spread upon the roll of Orient township
for 1875. This sum was not included in the amounts certi-
fied to the board of supervisors under section 26, and
approved by them under section 31. It is embraced in the
warrant annexed to the tax roll, and is apportioned among
four highway districts. It does not appear into what num-
ber of highway districts the township of Orient is divided.

It is claimed by defendant that the assessment was author-
ized by section 22 of the statute of 1875, p. 91, which
authorizes the supervisor to assess unworked highway taxes
from a list furnished by the commissioner of highways; and
it is further claimed that there is nothing in this record show-
ing that the land in question was in either of the highway
districts assessed. The record does not furnish sufficient
*data* to authorize us to say that this highway tax was illegally
assessed. *Robbins v. Barron,* 33 Mich. 124; *Stockle v. Sils-
bee,* 41 Id. 615.

The fifth objection is based upon a misapprehension. The
supervisor's warrant combines the two items of $250 for
township purposes, and $25 for special building fund, into
one item, making $275, which the warrant authorizes the
treasurer to collect for township purposes.

The point taken under the sixth objection, that the equal-
ization was performed by a committee instead of the whole
board, cannot be sustained. The committee made their
report to the board, and the report was adopted by the board.
This made the action of the committee the action of the board.

The report consisted of a tabular statement, embracing all the townships in the county, under headings as follows:

| Township. | Real as Assessed. | Pe sonal. | As Equalized. | Added to. | Deductedfrom. |
|---|---|---|---|---|---|
| Orient. <br> * * * | $118,826 <br> * * * | $21,321 <br> * * * | $130,147 <br> * * * | | $10,000 <br> * * * |
| Total. | $1,686,071 | $202,471 | $1,888,542 | $76,000 | $76,000 |

It is claimed that the report of the committee is ambiguous; that it does not show clearly whether the figures in the column headed "As Equalized" give the valuation of real property as equalized, or of the real and personal property of the several townships; that there are no figures, in fact, that purport to give the aggregate valuation of the taxable real and personal property of each township as determined by them, as required by law.

The law requires the board of supervisors, at their October session in each year, to examine the assessment rolls of the several townships, and ascertain whether the relative valuation of the real estate in the respective townships has been equally and uniformly estimated, and, if they shall find them relatively unequal, to equalize the same by adding to or deducting from the valuation such an amount as in their judgment will produce an equal and uniform valuation of the real estate in the county, and the amount added to or deducted from the valuation in each township shall be entered upon the records; and it enacts that they shall also cause to be entered upon their records the aggregate valuation of the taxable real and personal property of each township as determined by them.[1]

The object of the equalization is to obtain a just basis for the apportionment of the State and county tax among the several townships; and although it is only where the valuation of the real estate is relatively unequal that the board is

---

[1] How. Stat. § 1027.

authorized to add to or deduct from the aggregate amount
assessed in a township, yet when such alteration is made it
may as well be from the total valuation of real and personal
property as from the valuation of the real estate alone.    The
result or total valuation as equalized would be the same in
either case.    The statute contemplates that the additions or
deductions will be made from the aggregate valuation of all
the taxable property in the township.    *Silsbee v. Stockle*, 44
Mich. 561.    Where this method is pursued, the total of the
valuation as equalized will be the aggregate valuation of the
taxable real and personal property of each township, and the
footings of this column will show the aggregate of all the
taxable property in the county, and thus the *data* is obtained
for apportioning the State and county tax.    There is no
ambiguity in the record relative to the equalization of the
tax of 1875, and it is sufficiently definite for all purposes.

It will not be necessary to notice the seventh objection
further than to state that we are satisfied with the decision
in the case of *Robbins v. Barron*, 33 Mich. 124.[1]

The tax deed of 1876 is claimed to be invalid because the
equalization of the assessment rolls for that year was made
at the June session of the board, pursuant to How. Stat. §
324, and that this section contravenes section 26 and 27 of
the tax law of 1853; and also that it is unconstitutional
because its object is not expressed in the title of the act.
The title of the act, which is "An act to provide for a State
Board of Equalization," is sufficiently indicative of the
object expressed in section 324.    It was held in *Silsbee v.
Stockle*, 44 Mich., at page 565, that, where the board of
supervisors equalized the rolls in June under the authority
conferred by statute, a failure to go through with the formal-
ity of another equalization in October was not fatal to a tax
deed.    This disposes of the objection.

[1] See *Peninsula Iron & Lumber Co. v. Township of Crystal Falls*,
60 Mich. 519 (Note 2).

Several objections were made to the validity of this deed which have been discussed and passed upon in considering the validity of the tax deed of 1875, and it will not be necessary to repeat them.

Plaintiff's counsel claims that the two-mill tax was excessive; that the amount of taxable property in the township was $138,824, and the two mill tax should have been $277.65, and $280.66 was levied. It is true, as stated in Cooley on Taxation (2d ed.), 429, that—

"All statutes are mandatory which expressly or by implication limit the amount of taxes that may be levied. When these are exceeded by a sum which is spread upon the whole roll, the whole levy is void."

The principle has been recognized by this Court in the following cases: *Lacey v. Davis*, 4 Mich. 140; *Case v. Dean*, 16 Id. 12, 32; *Hammontree v. Lott*, 40 Id. 190; *Wattles v. Lapeer*, Id. 624.

The excess is claimed in this case to have been three dollars and one cent. The ground upon which excessive levies are held to invalidate the tax deed is that such levies are unauthorized, and the officer has no jurisdiction to make the levy. Where such lavy is made upon the taxable property contained in the whole roll, it invalidates the whole rol'. While the amount laid upon each individual may be insignificant, the principle remains unaffected. If a small sum may be assessed without jurisdiction and without authority, and the roll be held legal and valid, why may not a larger sum; and where will the line be drawn? It is because it is impossible to fix a limit at which a tax-payer may be compelled to pay tribute at the unauthorized will of the taxing officer that courts are compelled to hold the least substantial infraction of the law fatal to the legality of the roll. If the supervisor may lay an unauthorized burden of three dollars, he may with equal right lay one of three thousand, and the

roll would be as valid in the one case as in the other. As was said in *Wattles v. Lapeer*,—

"An unauthorized levy of two per cent. on the valuation is no less illegal than one of a hundred per cent."

The tax deed of 1876 must, for this illegality, be held void.

The tax deed of 1878 is assailed for several reasons. Two not already passed upon are the following: That the records of the board of supervisors show that but $150 was authorized to be raised for township purposes, while, as appears by the warrant, the supervisor levied $310.97. The defendant's counsel point out that the record shows that there was authorized to be spread upon the roll this year in Orient $160.97 rejected tax of 1872, and that this sum, added to the $150 township tax, makes the sum of $310.97, and, as there is no authorization in the warrant to collect this rejected tax, it is fair to say that it was ordered to be collected with the township tax; that the two amounts making the aggregate he is authorized to collect as a township tax is quite conclusive that the item $310.97 includes the rejected tax, and, for all the record shows, may have been strictly a tax, when collected to be used for township purposes. This position is not borne out by the record, except to the extent that the two sums amount to $310.97.

The law requires the county treasurer to lay before the board of supervisors a statement of rejected taxes, and it is their duty to cause the same to be reassessed upon the *same* land, if proper so to do, and if not to be reassessed upon the taxable property of the township at *large*. These taxes, when collected, belong to the county, to whom they have been charged by the Auditor General. The law also provides that after the apportionment is made, as required by section 31, the clerk of the board of supervisors shall make out two certificates of the amount apportioned to be assessed

upon the property of each township, for State, county, township, fractional school districts, and other purposes, one of which he shall deliver to the county treasurer, and the other to the supervisor of the proper township. One of these certificates, signed by the clerk of the board of supervisors, is attached to the roll in this case, and is in evidence. This contains a statement of the several taxes to be raised in the township of Orient for the year 1878, as determined by the board of supervisors. Among these items are the following:

" Rejected tax, to be reassessed at large, 1874, '73, and '77, ......................................... $122.50
Township tax, .......................................... 150.00 "
"Rejected tax 1877, to be reassessed on same description, N. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, sec. 17, 80 acres, valuation, $320; State, 54c.; county, $2.75; town, 56c.; school, $3.49; special road, 56c.; rejected, 18c.; total, ........................ 8.08
E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, sec. 36, 80 acres, valuation, $80; State, 14c.; county, 69c.; town, 14c.; road, 80c.; school, 16c.; special road, 14c.; rejected, 4c.; total, ........................................ 2.11
Rejected tax, 1872, to be spread at large, ......... 160.97."

Also attached to this roll is the warrant of the supervisor to the treasurer, commanding him to collect and retain in his hands for township purposes $310.97; also the further sum of $283.47 rejected tax, and balance due the county; also the further sum cf $10.19, rejected tax 1877, reassessed on same descriptions.

Now, it will be observed that the rejected tax authorized to be reassessed at large, amounting to $122.50, and the other item of rejected tax of 1872, amounting to $160.97, make just the amount the treasurer is commanded to collect for rejected taxes and pay to the county treasurer, namely, $283.47; which is quite suggestive that this item of $160.97 has been twice levied,—once included in the item of $310.97 as township tax, and again in the item of $283.47 as rejected tax. In the latter case it was authorized, in the other not.

Is the evidence appearing upon the face of the record sufficient to overcome the presumption of the legality of the assessment? The burden of proof is upon the party attacking a tax deed to show its illegality. The law declares that all taxes assessed upon any property in this State shall be presumed to be legally assessed until the contrary affirmatively appears. This affirmative showing may, and often does, in these cases, involve the production by the attacking party of negative proof; and it was incumbent upon the plaintiff in this case, in order to overthrow the presumption of the legality of the amount levied for township purposes, to introduce the township records to show that the amount which the supervisor levied for township purposes was unauthorized. *Robbins v. Barron,* 33 Mich. 124; *Upton v. Kennedy,* 36 Id. 215; *Hunt v. Chapin,* 42 Ill. 24.

The same reasons apply to the other items which plaintiff's counsel claim were levied without authority of law. Every presumption must be repelled.

The further objection is made that the record does not show the amount of State taxes to be apportioned among the several townships. The only evidence of an apportionment of the State tax is including $153.17 in the statement made by the clerk of the board of supervisors to be raised in the township for the year 1878, under section 32 of the tax law. This is not enough. The record contains no *data* from which to ascertain whether this is the just amount or proportion of the State tax that Orient should pay. The law requires the apportionment to be entered at large on their records. But they do not even show the amount of State tax to be apportioned. For this reason this deed cannot be sustained.

The tax deed for 1880 must be declared null and void for the same reason as last above stated for the deed of 1878.

The deed for 1875 appearing upon this record to be valid, judgment must be affirmed and record remanded.

The other Justices concurred.