THOMAS L. HECOCK v. CHARLES VAN DUSEN ET AL.

*Trespass—Possession of plaintiff—Title—Tax deed—Supervisor's certificate—Evidence.*

1. In trespass to lands, where the defense of title is interposed, the plaintiff must either show possession or paramount title in himself.

2. Paying taxes upon wild and uninclosed land, and occasionally looking it over, and requesting neighboring residents to report if it was trespassed upon, will not give the party asserting such acts of ownership such a *possession* as will entitle him to maintain an action of trespass.

3. A defendant in a trespass suit who entered into possession under a tax deed, and cleared up and fenced a small portion of the land, and planted a crop, and was in actual possession, claiming under said deed, is in a position to contest the plaintiff's title, the deed, though conceded to be void, giving him color of title to the whole premises; citing *Hoffman v. Harrington,* 28 Mich. 92.

4. The tax roll returned to the county treasurer is not admissible in evidence to show that the supervisor's certificate of assessment is defective, such certificate being no part of such tax roll, and not required to be copied therein; citing *Boyce v. Sebring,* 66 Mich. 215, 216.

Error to Monroe. (Kinne, J.) Argued April 18, 1890. Decided April 25, 1890.

Trespass. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Randall & Corbin,* for appellant.

*John O. Zabel* and *G. Morris,* for defendants.

[The points of counsel are stated in the opinion.—REPORTER.]

LONG, J. This suit was commenced in justice's court. Plaintiff declared against defendants in trespass for cutting timber upon the land, claimed to be owned by plaintiff in fee-simple, situate in the township of Summerfield, in Monroe county, and described as the "west half of the north-east quarter of section one." The defendants jointly pleaded the general issue, and gave notice, under the statute, that the title to land would come in question, also that the premises described in said declaration were not the close of the said plaintiff, but were the close and premises of Laurayn E. DeWolf and Charles H. DeWolf, under whose authority the said defendants entered and did the acts complained of. Defendants thereupon filed a bond as required by the statute, and the justice certified the cause to the circuit court of Monroe county.

The cause was brought to trial before the court without a jury, and the plaintiff, to maintain and prove the issue on his part, offered in evidence nine several deeds from the Auditor General of the State, purporting to convey the above-described premises to the plaintiff on account of taxes delinquent thereon for the years 1871, 1873, 1874, 1875, 1876, 1877, 1878, 1879, and 1880, for which taxes the lands were sold to the plaintiff; which deeds were admitted in evidence, subject to various objections

of defendants to their validity.   On the hearing the court
found the following irregularities in the proceedings to
assess, levy, and collect the taxes upon the land in con-
troversy for the several years for which the deeds were
given:

1. That the certificates of the supervisor attached to
the several assessment rolls for said years do not comply
with the requirements of the statute.

2. That for several of said years a larger amount of tax
was assessed for township purposes than was authorized
to be assessed, as follows:

*a*—For the year 1871 the said certificate, both as to the real and
personal estate, was "that I have estimated the same at what I
believe to be the true *taxable* cash value thereof," instead of the
true cash value thereof; also, there was an excess of taxes assessed
for highway purposes and bridges for that year of $400, which was
unauthorized.

*b*—For 1873 the form of the certificate was the same as the year
1871, and there was also an unauthorized assessment for highways
and bridges of $300.

*c*—For 1874 the certificate was in the same form as the former
years noted, with the additional statement that the real estate is
not estimated for what it would sell for "at *private* or auction
sale," instead of of "*forced* or auction sale," and there was also an
unauthorized excess of assessment for highways and bridges of
$300.

*d*—For 1875, no certificate of the supervisor is attached to the
assessment roll; and there is also an unauthorized assessment for
township contingent expenses of $100, and for highways and bridges
of $33.

*e*—For the years 1876 and 1877 the supervisor's certificate attached
to each assessment roll certifies, as to the real estate, that "I esti-
mated the same at what I believe to be the value thereof," instead
of "the true cash value thereof."   The words "and not at the price
it would sell for at forced or auction sale" are entirely omitted.
As to the personal property, the same certificate states that "I have
estimated the same at its true value, in accordance with the *usual
way* of assessing property in this county."

*f*—For the year 1878 the certificate states, as to the realty, that
it is estimated "at what I believe to be the true cash value thereof
as *usually* assessed."   As to the personal, he certifies, "I have esti-
mated the same at the true cash value, as aforesaid, according to
my best information;" the words "and belief" being omitted

after "information," leaving "as aforesaid" to refer to "as usually assessed." Also, there was an unauthorized assessment for highways of $446.75.

g—For the year 1879 there is no certificate of the supervisor attached to the assessment roll; also, there is an unauthorized assessment for highways and bridges of $757.50.

h—For the year 1880 the supervisor's certificate attached to the assessment roll does not contain the words "and not at the price it would sell for at forced or auction sale," nor does it contain the words "and belief" after "information," at the end of the certificate; also, there is an excess of assessment, unauthorized, for highways and bridges, of $550.

The court further found that plaintiff had paid the taxes assessed upon the land in controversy for the years 1881, 1882, 1883, 1884, and 1886; that the plaintiff had occasionally looked over the lands, and at two different times, some years since, had requested two neighboring residents to look after trespassers on said lands, and inform him if trespasses were committed; that plaintiff had never fenced, inclosed, occupied, or cut timber upon any part of said land; that said land is wild and unimproved, except what improvements were made by defendants.

The court further finds that the defendants offered in evidence a deed dated December 20, 1886, executed by the county treasurer of Monroe county to Laurayn E. DeWolf and Charles H. DeWolf, the real defendants herein, purporting to convey to them the land in controversy for delinquent drain taxes assessed thereon in the year 1882; that after receiving said deed the said Laurayne E. and Charles H. DeWolf cleared off a piece of said land, containing from one-quarter to one-half an acre, plowed the same, sowed it to turnips, and constructed a brush and pole fence around it, except for about six rods at one end; that they paid all taxes assessed thereon for the year 1887; that they claimed to have purchased said land in good faith, but admitted on

the trial that their deed was insufficient to convey title, but claimed sufficient color of title to show the extent of their claim of possession.

The court found, as matter of law,—

1. That no one of the nine tax deeds introduced by plaintiff is valid.

2. That the plaintiff has failed to establish any such possession as is contemplated by the statute.

Judgment was entered in favor of defendants upon these findings. Plaintiff brings error.

In this Court, it is contended by plaintiff's counsel that the court erred—

"1. In allowing the defendants to introduce any evidence attacking the validity of plaintiff's tax deeds.

"2. In allowing any evidence attacking plaintiff's tax deeds for the years 1871, 1873, 1876, and 1879, and especially in allowing the introduction of the tax rolls and copies of the supervisors' certificates for said years, found in the county treasurer's office, the originals not being produced or accounted for, or their contents proved.

"3. In finding the supervisor's certificates for the years 1871, 1873, 1876, and 1879, insufficient, and not according to the requirements of the statute.

"4. In finding that there was any excess of taxes for any of said years.

"5. In not certifying that the title to said land did not come in question after defendants admitted on the trial that they did not have title, and did not offer to show title in any third person.

"6. In not finding that the plaintiff had possession of said lands sufficient to enable him to bring trespass, and to quiet title in him."

The bill of exceptions contains the evidence taken on the trial. The defendants having pleaded title, plaintiff could only maintain his action in one of two modes: He must either show possession or paramount title in himself. The court found the fact, and there was some evidence to support this finding, that plaintiff was not in possession at the time of the commencement of the action; and

it is apparent, from the testimony given, that he never had such possession as would entitle him to maintain the action of trespass from possession alone. Counsel contend, however, that defendants, after having pleaded title, abandoned that theory of defense on the trial; and, having admitted the invalidity of the county treasurer's deed, they were not in a position to contest the plaintiff's claim of title, and therefore they could not show the invalidity of the tax deeds under which the plaintiff claimed. It will be seen, however, that the defendants went into possession under the county treasurer's deed, cleared up a small part of the premises, planted a crop thereon, and were in actual possession of that part. Although it was admitted that the deed under which they claim was void, yet it gave them color of title to the whole of the premises described in the deed; they being in actual occupancy of a part. *Hoffman v. Harrington*, 28 Mich. 92. Defendants were, therefore, in a position where they might contest the title with plaintiff; and the plaintiff, to sustain his action, must prove his title to the premises.

*Prima facie*, his tax deeds showed the title in him, but the defendants had the right to contest their validity. The court, upon the evidence offered, found them invalid. If this is so, the plaintiff could not recover. It is not claimed here that the certificates to the rolls for the years 1874, 1875, 1877, 1878, and 1880 are in compliance with the statute; and it is not strenuously insisted that the deeds for those years can be upheld. But counsel contend that the only showing made as to the certificates of the supervisors to the rolls for the years 1871, 1873, 1876, and 1879 was from an introduction of the tax rolls from the county treasurer's office, and not the assessment rolls from the office of the supervisor. There can be no doubt that, under the ruling of this Court in *Boyce v.*

*Sebring,* 66 Mich. 216, and cases there cited, defendants could not prove defective certificates from these tax rolls. It was there held that the certificate is no part of the roll, and need not be copied into the tax roll delivered to the collector. But this question does not become important except for the year 1876, from the view we take of the unauthorized assessment in the township, for those years, for highway and bridge funds.

The evidence supports the finding of the lower court that there was such unauthorized excess of moneys assessed for the years 1871, 1873, and 1879. Some claim is made that this excess might possibly have been made up from some action taken by the board of supervisors of the county in relation to taxes for highways and bridges, and that they may have authorized that excess, or that it might have been from the highway labor assessed and returned by the overseer, and levied by the supervisor; that, the presumption being, under the statute, that the whole amount is legally assessed, it was the duty of the defendant to produce the records of the action of the highway commissioner in assessing the highway labor tax for those years, and the reports of the overseers showing the amount paid; also what action, if any, was taken by the board of supervisors.

The statute then in force (chapter 10, Comp. Laws of 1871), by section 11, subd. 15, empowered the board of supervisors—

"To authorize any township or townships, in their respective counties, by a vote of the electors of said township or townships, to borrow or raise by tax upon such township any sum of money, not exceeding one thousand dollars in any township in any one year, to build or repair any roads or bridges," etc.

It is also provided by chapter 25, § 15, Comp. Laws of 1871, that—

"Every overseer of highways shall, between the first and fifteenth days of November in each year, when required by a commissioner of highways, make out and deliver to such commissioner a list of all the lands of non-residents and of persons unknown which are taxed upon his list, on which the labor assessed has not been paid, and the amount of labor unpaid," etc.

Section 16 provides that—

"The supervisor of each township shall cause the amount of such arrearages of labor, estimating the same at one dollar for each day, to be levied on the lands so returned, and to be collected in the same manner that the contingent charges of the township are collected; and the same, when collected, shall be paid into the township treasury, to be applied by the commissioners of highways in the construction and improvement of roads," etc.

It appears, however, that for the years 1871, 1873, and 1879 the supervisor assessed these several items of non-resident highway tax, and that the same were charged to the township treasurer upon the books of the township clerk. This is evidence of the fact that this non-resident highway tax did not make up any part of the excess found by the report. We think the records put in evidence show quite conclusively that no part of this excess is made up of an amount authorized to be voted by the board of supervisors, under the provisions of the statute above quoted, and the court properly held the deeds void for those years by reason of such excess.

This does not, however, apply to the tax deed for the taxes delinquent for the year 1876. No excess is shown for that year, but the court set aside the deed exclusively upon the defective certificate of the supervisor. This was made to appear by the tax roll found in the office of the county treasurer. This was incompetent for that purpose, and the facts do not support the finding of the court below.

For this reason the judgment of the court below must be set aside, with costs, and a new trial ordered.

The other Justices concurred.