COTTLE, County Treasurer, et al. v. UNION PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. September 19, 1912.)

No. 3,565.

1. COUNTIES (§ 192*)—LEVY OF TAX—REDEMPTION FUND—WYOMING STATUTE.
   Under Comp. St. Wyo. 1910, § 1125, which requires the board of county commissioners to levy annually in addition to all other taxes sufficient to pay the interest on all outstanding bonds of the county, and "at least one year before such bonds become due and in time to provide means for their payment, shall cause to be levied a sufficient additional sum to pay such bonds as they become due," the time for making a levy for such redemption fund is within the discretion of the board, subject to the limitation that it must be at least a year before the maturity of the bonds, and the fact that it might have been made a year later does not invalidate the levy.

   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 300–302; Dec. Dig. § 192.*]

2. COUNTIES (§ 190*)—VALIDITY OF LEVY—STATUTORY LIMITATION ON AMOUNT.
   Under Comp. St. Wyo. 1910, § 2341, which provides that, unless authorized by a vote, no levy of taxes shall be made by a county board, aside from a tax levied to pay a judgment or bonded debt, which will produce a sum more than 10 per cent. greater than that levied and collected in the preceding year on the same assessed valuation, the tax levied on migratory stock under section 2383, which is distributed between the counties in which such stock ranges, is to be taken into consideration in determining whether or not a levy is excessive, to the extent of the amount which the county making the levy retains as its share.

   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 303, 304; Dec. Dig. § 190.*]

3. TAXATION (§ 611*)—SUIT TO ENJOIN COLLECTION OF TAX—PARTIAL INVALIDITY—EXCESSIVE LEVY.
   That a tax levy exceeds the constitutional or statutory limit as to amount does not render the entire tax void, and a court of equity will enjoin collection only of the unauthorized excess.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. § 611.*]

4. TAXATION (§ 611*)—SUIT TO ENJOIN COLLECTION OF TAX—INTEREST.
   In a suit in equity to enjoin collection of a tax which was in part illegal, where complainant paid the amount it deemed legally due, although the payment was not sufficient, a heavy penalty imposed by statute for delinquency will not be enforced as to the amount remaining due, but complainant will be required to pay only legal interest thereon.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. § 611.*

   Restraining collection of taxes because of excessive or unequal assessments or valuations, see note to Atchison, T. & S. F. Ry. Co. v. Sullivan, 97 C. C. A. 16.]

Appeal from the Circuit Court of the United States for the District of Wyoming; John A. Riner, Judge.

Suit in equity by the Union Pacific Railroad Company against Thomas Cottle, Treasurer of Sweetwater County, Wyo., and others. Decree for complainant, and defendants appeal. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Walter B. Dunton, of Green River, Wyo., and D. A. Reavill, of Rock Springs, Wyo. (N. E. Corthell, of Laramie, Wyo., on the brief), for appellants.

John W. Lacey, of Cheyenne, Wyo. (Herbert V. Lacey, of Cheyenne, Wyo., on the brief), for appellee.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. The Union Pacific Railroad extends through Sweetwater county, Wyo., and the company owns a large amount of land in that county. The entire levy upon its property in the county for 1909 was $70,813.64. Of this it paid $62,576.48, and brought this suit against the county treasurer and ex officio county collector and the board of county commissioners to perpetually enjoin the collection of the balance of $8,237.16. A decree was rendered for the company and the treasurer, collector, and the board of county commissioners appeal. The taxes sought to be enjoined are of two classes: First, a levy for bond redemption purposes; second, a levy for general county, school, and library purposes.

As all the statutes of Wyoming here material have been carried into the Compiled Statutes of Wyoming for 1910, references will be made thereto. The county of Sweetwater is a municipal corporation.

"On the first Monday of September of each year, the board of county commissioners shall, by an order to be entered of record among their proceedings, levy the requisite taxes for the year, and the same may be levied any time prior to the first Monday of September, if the statement and notice required by section 2340 has been received from the auditor." Compiled Statutes of Wyoming, § 2343.

The statement and notice required by section 2340 of the Compiled Statutes having been received on August 31, 1909, the board levied $6/10$ of a mill for bond redemption purposes and $3\frac{1}{2}$ mills for general county, $1^3/10$ mill for school and $^{13}/100$ of a mill for library, a total of $4^{93}/100$. Subsequently, and after the first Monday in September, the board changed $^{24}/100$ of a mill from the general fund to the bond levy. There is doubt about its power to make such change after the first Monday in September. Standard Coal Co. v. Independent District of Angus, 73 Iowa, 304, 34 N. W. 870. This resolution was, however, subsequently rescinded, and, if the board had power to pass it, it undoubtedly had power to rescind it. With limitations not necessary to set out in detail, the county board was authorized to levy for general county expenses, including the school tax, not exceeding 12 mills, for schools not more than 3 mills, and for library not more than $\frac{1}{2}$ mill. At the time the bonded debt of Sweetwater county was contracted the following law was in force:

"Sec. 1125. The board (of county commissioners) shall cause to be levied annually upon all taxable property of the county, in addition to other authorized taxes, a sufficient sum to pay the interest on all bonds disposed of, in pursuance of the provisions of this chapter, and shall at least one year before such bonds become due, and in time to provide means for their payment, cause to be levied a sufficient additional sum to pay such bonds as they become due, and all such taxes shall be levied, assessed and collected,

as other county taxes, until the bonds so issued are fully paid, including the interest thereof. * * *"

Before the levy of 1909 the following law had been enacted:

"Sec. 2341. It shall be unlawful for the state board of equalization or any board of county commissioners, county board of equalization, county officer, city council, or other officer authorized, or whose duties it may be under the laws of the state to direct, fix or make any tax levy on the assessed valuation of property for purposes of taxation, to direct, fix or make any levy upon the assessed valuation of property within their jurisdiction that will produce a sum of money increasing the total sum produced by the tax levied upon such property for the previous year more than ten per cent.; Provided, that the electors of any county, city, town or school district may, by a direct vote at any general or special election held as provided by law in counties, cities, towns, or school districts respectively, authorize an increase in any levy not in excess of the limitation fixed by the Constitution and laws of this state.

"Sec. 2342. The above section shall in no way limit the amount of any levy necessary to be made for the purpose of paying any judgment or bonded debt against any county, municipality or school district. It shall be unlawful for any officer of any county, city or municipality within the state to enter upon the tax roll of such county, city or municipality, any levy made in violation of the provisions of the preceding section. Any officer of any board, commission, or other officer, who shall violate any of the provisions of the preceding section, shall upon conviction be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, for such offense, and any such conviction shall be sufficient grounds for his removal from office."

In passing to the consideration of the bond redemption levy, attention is called to the fact that, being unable to limit the taxes for the payment of bonds below that authorized at the time they were issued if the then authorized limit was needed for their payment, it was expressly provided in section 2342 that the above section 2341 shall in no way limit the amount of any levy necessary to be made for the purpose of paying any bonded debt. Under section 1125 separate levies had been made for the bond redemption fund and its bond interest fund. The principal of the bonded debt of the county was $20,900, the last of which became due November 3, 1911. The interest on these bonds and the other interest owed by the county on bonds amounted to $1,868. The county then had on hand in its bond interest fund $3,637.89, so that the money collected for interest in prior years exceeded the amount necessary to pay the interest by $1,769.89. The amount then in the bond redemption fund was $10,-095.30. If an excessive interest fund had been collected in prior years, it should have been attacked before collection, and we do not find that there was any authority to compel funds collected for interest to be used in payment of principal.

The assessed value of Sweetwater county for 1909 was $18,981,753, and from this was deducted as improperly assessed $1,126,551, leaving the net amount $17,855,202. Of this amount $2,743,841 was upon what are known as migratory sheep; that is, sheep that graze in one county part of the year and in others the balance. The net assessment after all corrections and deducting migratory sheep was $15,-111,361.

"Sec. 2383. Migratory Stock Fund. All taxes collected under the provisions of this chapter shall be held by the county treasurer collecting the same, in a special fund—to be known as 'The Migratory Stock Fund'—and such

fund shall be paid out and disbursed as provided by section 2382 and not otherwise. Payments from said fund shall be made first to the state. Second, to the several counties interested. Third, the balance remaining in said 'The Migratory Stock .Fund' after making the payments hereinbefore provided, shall be covered into the general fund of the county." Revised Stat. utes of Wyoming 1910.

It thus appears that the law, while providing for levying upon these sheep for various purposes, provided the whole amount left to the county should be covered into the general fund instead of distributed. This left for actual appropriation to bond redemptions from the new levy only $6/10$ of a mill on $15,111,361 or $9,066.81. There was to be paid upon the principal of the bonded debt above the amount of the sinking fund $10,804.70, so the amount realized from the taxes, if all were collected, would be $1,737.89, less than the amount due. If the entire interest fund was applied to bond redemptions, the levy would produce $32 too much. This would be about $1/500$ of a mill in excess of the amount required. The law cares not about very trifling matters.

[1] It is contended that as $1,000 of the bonded debt did not mature until March 1, 1911, and $5,300 not until November 3, 1911, a tax levy in 1910 would have been in ample time to have met these obligations. The statute required the levy to be made at least one year before the bonds became due, and in time to provide means for their payment. There are but two limitations as to time of this levy. First, it shall be made at least one year before the bonds become due; and, second, it shall be made in time to provide means for their payment. The second provision clearly contemplates that it may be necessary to levy more than a year before the maturity of the bonds. Under the law taxes become due and payable after the third Monday in September, and become delinquent on December 31st of each year. It does not appear how soon they are usually collected by distress and sale if not voluntarily paid. In any event, it was for the county board to determine whether a 1910 levy would actually be paid in time to meet these bonds at maturity, and it determined that such levy could not be relied on.

[2] The levy for bond redemption purposes was valid. It is claimed that in applying section 2341 of the Wyoming Statutes migratory stock should not be considered. In this we do not concur. Taxes levied upon such stock and turned over to other counties may be regarded as collected as trustee or agent for the other county, but money from this source actually collected and retained by the county is as much a part of its revenues as any other taxes.

The whole tax levied for the purposes in question for 1908 upon Sweetwater county amounted to $70,898. There was abated $935.70, leaving the net revenues $69,962.30. In addition to this, the county collected net on sheep from other counties $2,631, making the actual receipts $72,593.30. They were entitled to levy 10 per cent. in addition to this for the year 1909, which would make the legal revenues for the latter year $79,852.63. The gross assessment for 1909 was $3,600,202 on sheep and $15,381,551 on all other property. By abatement for double and erroneous assessments the sheep were reduced

$856,361, leaving the net assessment on sheep $2,743,841, and the other property was reduced $270,190, leaving its net amount $15,-111,361. A levy of $4^{93}/_{100}$ mills on $15,111,361 should produce $74,-499. As already explained, the bond tax, although levied on migratory stock, became a part of the general fund, so the tax upon sheep to the amount of $2,743,841 for general school and library purposes would be at the rate of $5^{53}/_{100}$ mills, and would amount to $15,173.44. Sweetwater county paid from this to Uinta county $993, Carbon county $3,267, and Fremont county $1,110, a total of $5,370. Deducting this sum from $15,173.44 leaves a balance of $9,803.44, and adding this to the amount collected on other property, $74,499, makes $84,-302.44 or $4,449.81 in excess of the amount that could be lawfully levied for that year. It is provided by section 28 of article 1 of the Constitution of Wyoming that "all taxation shall be equal and uniform."

[3] As the Union Pacific Railroad Company is not entitled to enjoin the bond redemption tax, the sheep owners are not entitled to recover any part of what they paid on that tax, even though by statute it is turned into the general fund. The railroad is entitled to enjoin its pro rata share of $4,449.81. This is to be arrived at by the relation its taxes for general county, school, and library bear to the entire levy made expressly for those purposes. The whole net amount collected on migratory sheep was $9,803.44. This was computed at $5^{53}/_{100}$ mills, but divided between the general county, school, and library tax of $4^{93}/_{100}$ mills, and the tax of $^6/_{10}$ of a mill for bond redemption purposes, it would be $8,739.78 for the former and $1,063.66 for the latter. This would make the total proceeds of the levy of $4^{93}/_{100}$ mills $74,499 plus $8,739.78, or a total of $83,238.78. The railroad company's levy at $4^{93}/_{100}$ mills on $8,237,161 would be $40,609.20. This tax was therefore excessive as $83,238.78 is to $40,609.20 as $4,-449.81 is to $2,170.90. The company retained $8,237.16. As the tax imposed on the company in which the illegality existed was $40,609.20, and the illegal portion of the tax was only $2,170.90, was the whole tax void or only void to the extent of $2,170.90? This is a question upon which courts have differed, and in attempting to weigh the authorities upon the subject the form of the litigation becomes material.

In most states, in the absence of statutes, tax sales are void if any portion of the tax for which the property was sold is invalid, and if personal property be distrained, and if suit be brought in trespass or in replevin, the invalidity of a portion of the tax is determinative of the suit. If the taxpayer brings suit to enjoin the taxes, the rule that he who seeks equity must do equity is applicable. These distinctions must be borne in mind in attempting to consider the various cases upon the subject. Thus in Maine it having been held in Elwell v. Shaw, 1 Me. 339, that if land is sold for nonpayment of divers taxes one of which is illegal, and the rest legal, the sale is void. It was further held that, when assessors were sued in trespass because a horse had been seized upon their warrant upon a tax in excess of the lawful limit, the action would lie because the excess

vitiated the levy. Huse v. Merriam, 2 Me. 375. In Colman v. Anderson, 10 Mass. 104, it was held that the assessor's warrant to the collector while it called for an excessive levy would protect the collector, and a tax deed was valid. In Stetson v. Kempton, 13 Mass. 271, 7 Am. Dec. 145, in an action of trespass for seizing plaintiff's chaise and harness under a levy, part of which was legal and part illegal, it was held the action would lie, but the court said:

"Whether the damages may not be diminished by the jury in proportion to the sum which shall appear to be a lawful subject of taxation may be considered in the inquiry which is yet to be had by the jury."

In Libby v. Burnham, 15 Mass. 144, in an action in trespass against the assessors for the seizure by the collector of the plaintiff's oxen for payment of taxes, the court said:

"It is impossible to distinguish between that part of a tax which might have been rightly assessed, and that for which no authority is given; so that the assessment should be valid for one part, and void for another. This point was settled in the case of Stetson v. Kempton et al."

In Joyner v. Egremont, 3 Cush. (Mass.) 569, it is squarely held that where a district votes $250, and the assessors assess $285.01, their action was void, and one who paid the collector could recover the whole amount back from the school district. In Clarke v. Strickland, 2 Curt. 439, Fed. Cas. No. 2,864, Ware, District Judge, said:

"All the authority they had for levying any tax was derived from the statutes and these limited them to the precise amounts named in the respective acts. The additional tax imposed by them was an excess of power that rendered the whole tax void, so that the state tax was all that was legally due. Such is the settled rule of jurisprudence."

No further argument is made by him, and the only authorities cited are Stetson v. Kempton, 13 Mass. 272, 7 Am. Dec. 145, Libby v. Burnham, 15 Mass. 144, and Joyner v. Egremont School Dist., 3 Cush. (Mass.) 569.

In Johnson v. Colburn, 36 Vt. 693, a tax was levied to cover the expense of moving schoolhouses and the legal expenses of contesting a former levy previously adjudged illegal for the expenses of moving said houses. The court entered upon a discussion of whether both these expenses were the subject of a legitimate levy, and held they were. As a reason for entering upon the discussion, the court said: "If any part of the tax is void, it being entire, the whole is void." The court cites no authorities, and in fact makes no further argument. The question was not really involved in the case, but, as it was an action for replevin of a cow seized for taxes, the statement was probably correct.

In Dean v. Lufkin, 54 Tex. 265, a levy of seven cents on the dollar had been made to pay two distinct classes of warrants. The full statutory tax had already been levied to pay one of these classes. It was held, and manifestly correctly, that there was no way to divide the seven-cent levy, and it must all be enjoined. In the City of San Antonio v. Raley, in the Court of Civil Appeals for the Fourth District of Texas, 32 S. W. 180, it was held that the tax of $1.05 on each $100 where the statute only authorized a tax of $1 on the hun-

dred was void in its entirety. This was done upon text-book citations only. Cummings v. Fitch, 40 Ohio St. 56, without discussion or the citation of any authorities, declared such taxes void. In Lacey v. Davis, 4 Mich. 140, 66 Am. Dec. 524, an action of ejectment in which the controversy had its origin in tax sales, one of these was for taxes, including an unauthorized township tax, the court said:

"In personal actions against the collector and others for collecting or attempting to collect such tax, courts have held that when the tax was divisible, and the excess could be ascertained, such excess might be rejected, and the balance of the tax held good, but that principle has no application to cases of ejectment where the validity of the title depends upon the validity of the tax and subsequent proceedings, and where from the very nature of things there can be no separation of the good from the bad. It is only applicable in personal actions or in direct proceedings to collect the tax and does not operate upon property acquired upon tax sale."

In Michigan the question has been governed by statute from an early date that, when an illegality affects the amount of tax only, the tax shall be sustained so far as it be just and legal. In Conners v. City of Detroit, 41 Mich. 128, 1 N. W. 902, where a suit was brought to enjoin certain taxes as excessive, the Supreme Court, in an opinion by Judge Cooley, said:

"There is no equity in the complainant's claim to restrain the collection of the whole city tax because the levies for certain funds are excessive. He should have offered to pay what the common council might legally assess to these funds, and the whole of the remainder. There was no difficulty in ascertaining by mere arithmetical calculation what he should tender. Having failed to do this, the court, while sustaining his bill to the extent of what he ought equitably to pay, should have awarded costs against him."

And in Hewitt v. White, 78 Mich. 117, 43 N. W. 1043, it was held that a tax title was void upon a sale for a tax, including an excessive one. To the same effect was Boyce v. Sebring, 66 Mich. 210, 33 N. W. 815. In Mix v. People, 72 Ill. 241, the Constitution limited the county tax to 75 cents on the hundred dollars. A levy in excess of this was made, and the court said:

"This provision renders all of this tax void which is in excess of the corstitutional limit, but the books abound in cases which hold that in the exercise of a power any excessive action beyond the power will not vitiate acts, within the power where the acts well performed can be separated from those that are unauthorized. Here there can be no question that 75 cents on the $100 valuation was fully warranted, and that sum can be readily separated from the illegal and unauthorized sum levied in excess of that amount. It requires but a simple calculation to make the separation with precision."

To the same effect is People v. Chicago & Northwestern Ry., 249 Ill. 170, 94 N. E. 57. In State v. McClurg, 27 N. J. Law, 253, it is declared that an excessive tax is void only as to the excess. In Bright v. Halloman, 75 Tenn. (7 Lea) 309, it was held that the fact a larger sum than was lawful was levied does not make the entire levy unlawful, but that it is unlawful only to the extent of the unlawful exaction. In Whaley v. Commonwealth, 110 Ky. 154, 61 S. W. 35, where the Constitution prohibited counties from levying more than 50 cents on the hundred dollars in any one year, a county first levied 34 cents and then 25 cents in the same year. It was held that only 9 cents

of the last levy was invalid. In Mowry v. Mowry, 20 R. I. 74, 37 Atl. 306, the town of Smithfield levied a tax of $1.15 on the hundred dollars. The statute forbade more than $1 on the hundred. The court followed Mix v. People, 72 Ill. 241, and held the levy good for $1. In the City of Pensacola v. Louisville & Nashville R. Co., 21 Fla. 492, it is said:

"An assessment can only be declared unlawful as a whole when the illegality of an assessment is of such a character that it affects every item in the list. If there be items of assessment which are legal and other items which are illegal, the assessment under said act should only be declared unlawful in part—that is, as to those parts that are illegal—and should be allowed to stand as to those parts that are legal, unless the legal and illegal are so blended as to be inseparable."

This case overruled Basnett v. City of Jacksonville, 19 Fla. 664. In Burlington & Missouri River Ry. Co. v. Saunders County, 16 Neb. 123, 19 N. W. 698, it was held that where taxes were levied for the insane, for which no sum could be levied not expressly authorized, the legal amount would stand and the balance be perpetually enjoined. In Union Pacific v. Howard County, 66 Neb. 663, 92 N. W. 579, it was said:

"It has been repeatedly held that an excessive levy does not render the entire levy void, but merely void as to the excess."

And in Clark v. Colfax County, 2 Neb. (Unof.) 133, 96 N. W. 607, it is said:

"Where taxes are levied in excess of the amount authorized by law, to the extent of such excess they are levied for an illegal and unauthorized purpose. C., B. & Q. R. R. Co. v. Nemaha County, 50 Neb. 393, 69 N. W. 958. As to such excess the levy is void."

In McPherson v. Foster Bros., 43 Iowa, 48, 73, 22 Am. Rep. 215, a bond tax was levied by an independent school district of 4 per cent. when the maximum allowed by law was 1 per cent. The levy was held good as to the 1 per cent. and invalid as to the excess. In Worthen v. Badgett, 32 Ark. 496, when the law only allowed a school tax of ½ of 1 per cent. and 1½ per cent. was levied, the whole tax was enjoined. In Wells Fargo & Co.'s Express v. Crawford County, 63 Ark. 576, 40 S. W. 710, 37 L. R. A. 371, when a county had the right to levy only 5 mills and was claimed to have levied 5½ the court said, before it could be enjoined, the plaintiff must tender the 5 mills. That an excessive levy is not void in whole, but void only, so far as the excess may go, was determined in Clifton v. Wynne, 80 N. C. 145, and Board of Education v. Commissioners, 107 N. C. 110, 12 S. E. 190, and the same rule is laid down in Taft v. Barrett, 58 N. H. 447. In Neenan v. Smith, 60 Mo. 292, the law authorized the assessment of the cost of paving against the adjacent property, and it was held the fact that some small amount of work may have been charged not contracted for in the contract would not invalidate the proceeding, but the additional amount so charged may be deducted on proper showing. See De Fremery v. Austin, 53 Cal. 380, and Howcott v. Smart, 130 La. 699, 58 South. 515.

These are substantially all the cases in the United States upon the

subject, and the court is of the opinion that not only is the greater weight of authority in support of the proposition that, where an action is brought to enjoin a tax because it exceeds the constitutional or statutory authority, only so much of the tax will be enjoined as exceeds the constitutional or statutory authority, and especially the court is of the opinion that the tendency of the more modern authorities is to that effect. The plaintiff below was therefore only entitled to have enjoined the collection of the sum of $2,170.90, leaving the sum of $6,066.26 still due.

[4] The statutes of Wyoming provide for a penalty of 18 per cent., but, in view of the illegality of the tax, the efforts of the company to pay what was justly due, and the controversy which has existed as to their amount, we think they should draw interest rather than this enormous penalty.

It is therefore ordered that the case be reversed and remanded, with instructions to the District Court, as the successor of the Circuit Court, that if it shall appear at any time within 60 days that the Union Pacific Railroad Company has paid the county treasurer of Sweetwater County the sum of $6,066.26, with 8 per cent. interest, which is the statutory rate in Wyoming, from December 31, 1909, a perpetual injunction issue restraining the collection of $2,170.90.