Wells v. The City of Weston.

-------

WELLS, Appellant, v. THE CITY OF WESTON, Respondent.

1. The legislature can not authorize a municipal corporation to tax, for its own local purposes, lands lying beyond the corporate limits.

*Appeal from Weston Court of Common Pleas.*

This was a petition filed by John B. Wells to set aside a sale of his land, made under the authority of the city of Weston, for the payment of a tax which the city claimed the right to levy and collect, and to enjoin the execution of a deed. The 5th section of the 1st article of the act to incorporate the city of

Weston, approved March 3d, 1851, provides, that "the inhabitants of said city shall have power to purchase, receive and hold property, both real and personal, within said city ; to purchase, receive and hold property, real and personal, beyond the city, for burial grounds, and for other public purposes." The 1st section of the 5th article conferred upon the inhabitants power "to levy and collect taxes on all property, real and personal, within the limits of the city, not to exceed one per cent. per annum upon the assessed value thereof, and may enforce the payment of the same in any manner to be provided by ordinance, not repugnant to the constitution of the United States and of this state." The 36th section of the same article conferred the power "to assess and collect a tax on all real estate outside of and adjacent to the corporation, to the distance of one-half mile ; *Provided*, that no tax shall be assessed as aforesaid of more than one-half of one per cent. per annum." The 39th section authorized the city "to make all ordinances which shall be necessary and proper for carrying into execution the powers specified in the act, so that such ordinances be not repugnant to, nor inconsistent with, the constitution of the United States." Under the 36th section of this act, the city, on the 25th of April, 1851, passed an ordinance *providing* "that a tax of one-half of one per cent. be levied upon all property, real and personal, within half a mile of the limits of the city."

On the 15th of August, 1851, an ordinance was passed authorizing the sale of land upon which the taxes should be unpaid, and providing the mode of making the sale. The 5th section authorized the execution of a deed to the purchaser, after the expiration of the time to redeem.

Under the authority conferred by the charter, and pursuant to the provisions of these ordinances, a tax of one-half of one per cent. was levied on the land of the plaintiff, lying outside of the city limits, but within half a mile therefrom ; and on the 8th of October, 1852, the land was sold by the city collector for the tax, and bought by the city.

A demurrer to the plaintiff's petition, showing all the facts, was sustained by the court below; and the plaintiff appealed. The cause was argued in this court by Messrs. *Abell*, *Stringfellow* and *Vories*, for appellant; and by Mr. *Gardenhire*, for respondent. The following is a very general and meagre statement of the points argued:

*Abell*, and *Stringfellow*, and *Vories*, for appellant.

I. So much of the charter as authorized the city to assess and collect a tax on land lying beyond the limits of the city is unconstitutional. 1. The constitution is not a mere limitation, but a grant of power. The government does not possess all power not prohibited, but only such as is granted. 2. There is no specific grant of the power in controversy, nor is it included in the grant of legislative power. (1 Dana, 501; 5 Dana, 30, 31; 6 Barr. 507; 4 Harrington, 479; 4 Hill, 145; 9 Gill & Johns. 365; 7 Gill & Johns. 7; 1 Bay, 98.) 3. It can not be derived from the power to organize municipal corporations, which is not a substantive, independent power, but a mere means of carrying into execution other powers, and is limited by the end to be accomplished. (Marshall, C. J. 4 Wheat.) 4. Nor can it be derived from the power to tax. (4 Hill, 82; 4 Comstock, 423, 424.) 5. The power in question is not only not granted, but is expressly prohibited by the constitution, both by the clause prohibiting the exercise of judicial power by the legislature, by the declaration, "no person shall be deprived of life, liberty or *property* except by the judgment of his peers, or by the law of the land," and by the declaration, that "no private property ought to be taken or applied to public use without just compensation." 6. The power claimed is in effect a power to take private property from one and give it to another, which is prohibited by the fundamental principles of free government, (Story, J. 2 Peters; Scudder v. Trenton, Dela. Falls Co. Saxton, 694,) and it violates the "inalienable right of life, liberty and the pursuit of happiness."

II. No power is given by the charter to *sell* lands outside

of the city for taxes, and it will not be presumed. (9 Mo. Rep. 513; 4 Peters, 513; 4 Halsted, 352.)

III. The city has no capacity by her charter to *purchase* lands lying outside of the city, for the purpose of collecting her taxes. (4 Shep. 224; 2 Scamm. 87.)

*Gardenhire,* for respondent. The 36th section of the 5th article of the act to incorporate the city of Weston, is constitutional. 1. The power of the general assembly is unlimited, except when restrained by the constitution. (1 Tucker's Com. 4; 1 Kent, 493 to 501; 20 Wend. 381; 1 Hill, 329; 9 Mo. Rep. 507; 13 Mo. Rep. 412–13; 15 Mo. Rep. 22. 2. Such an exercise of power is not restrained by the constitution. (9 Mo. Rep. 507; 13 Mo. Rep. 412–13; 15 Mo. 1, 22, 668; 18 Mo. Rep. 210, 214, 215, 238; 19 Mo. 12, 15; 11 Mo. 102, 104, 105; 15 Pick, 60; 4 Cow. 421; 4 Peters, 516, 561, 563; 4 Wheaton, 428; 24 Wend. 68.) 3. It is not taking private property for a private purpose, or private property for a public purpose, but simply authorizing the assessment of a tax for public purposes. (4 Pick. 463; 12 Pick. 477; 23 Pick. 394–5; 2 Porter, 296, 303; 3 Paige, 73, 74; 24 Wend. 68.) 4. The city had power to sell to enforce the payment of the taxes, (Art. 5, § 1 of the charter, 9 Mo. Rep. 509; 13 Mo. Rep. 41,) and to purchase. (Art. 1, § 3 of the charter, R. C. 1845, 231; § 1, p. 236; § 23.) 5. The 19th section of the Declaration of Rights, does not require equality of taxation, but simply that all property subject to taxation shall be taxed in proportion to its value. The property subject to taxation is determinable by the general assembly. (5 Pike, 204; 5 Dana, 31; 15 Mo. Rep. 24, 25, 26.)

LEONARD, Judge, delivered the opinion of the court.

The question that has been argued before us upon this record, and the only one that we have considered, is, whether it is competent for the legislature to confer upon the city of Weston authority to tax, for local purposes, land lying beyond

the corporate limits. We have considered the matter with all the care that it is our duty to do, when we are required to decide upon the constitutional validity of a legislative act; but being clearly of opinion that this provision of the charter violates the constitutional rights of the citizen, which we are bound to protect, we are constrained to pronounce accordingly. The judgment upon the demurrer will therefore be reversed and the cause remanded.

As the very purpose of instituting government is the protection of the citizen in his person and property, power to violate these rights would seem to be quite beyond the lawful authority of any government; and certainly the legislative department of this government can not arbitrarily take the property of one citizen and give it to another, and, of course, can not authorize others to do so. This is not within the power of any properly constituted government, and our American governments are expressly prohibited from taking private property, even for public use, without compensation to the owner. To justify even such an invasion of private property, it must be shown that the use for which it is about to be taken is a public one, and that the compensation to be given has been sufficiently secured to the party; and certainly, from the very purpose of all just governments, and this express provision in our own constitution, we may safely imply a constitutional prohibition against the arbitrary taking of private property for private use without any compensation. This, however, seems to be substantially the authority here given: those who live in the town are authorized to exact annually from those who live adjacent to it, a certain portion of their property, to be applied, under their own direction, to their own local purposes. And this we think can not be done under our government, which was instituted exclusively for the protection of individual rights, and where private property is expressly protected from any appropriation of it, even to public use, without full compensation to the owner.

It is true, the legislature possess the uncontrolled power of taxation, with the single limitation that "all property sub-

ject to taxation shall be taxed in proportion to its value;" and this authority to tax, they may undoubtedly delegate to subordinate agencies, such as county tribunals and municipal corporations, to be assessed and applied locally; but here the attempt is to authorize a municipal corporation—charged with the subordinate government of persons and things within its limits, and having, as incident to this, the power to tax these persons and things for local purposes—to impose a tax upon the lands lying beyond its limits; or, in other words, arbitrarily, under the mask of a tax, to take annually from those who are without its jurisdiction a certain portion of their property lying within a half mile of the corporate limits; which we think can not be done. Although it be true, as a general proposition, that the legislature can not delegate their legislative power, but must exercise it themselves under their appropriate responsibilities; yet the practice of creating municipal corporations—with subordinate legislative power over the local affairs of the inhabitants, and, as incident to this, with authority to impose taxes upon the persons and things within the local jurisdiction in order to supply the local necessities—being firmly established, and daily practiced by our American governments when our constitution was adopted, must be considered as an ordinary legislative power, and one, of course. that our legislature may lawfully exercise. But no instance, it is believed, can be found where these corporations have been clothed with power to tax others not within their local jurisdiction for their own local purposes; and if the legislature possess the power, now claimed, over private property, they ought to exercise it themselves, and not delegate it to those whose interest it is to abuse it.

It may be often difficult to draw the line between a legitimate exercise of the taxing power and the arbitrary seizure of the property of an individual, or of a class of individuals, for local or general purposes, under the mask of this power. In Chaony v. Hooser, (9 Ben. Munroe, 330,) the question was as to the constitutionality of a law extending the limits of the town of Hopkinsville, for the mere purpose, as the party alleged, of bringing

his property within the corporation as a subject of taxation; and the Judge, who delivered the opinion of the court, remarked, "this is not the case of vacant land or of a well improved farm, occupied by the owner and his family for agricultural purposes, and which, without being required for either streets or houses, or for any other purpose of the town but that of increasing its revenue, is brought within its taxing power by an act extending its limits. Such an act, though on its face simply extending the limits of a town, and presumptively a legitimate exercise of power for that purpose, would, in reality, when applied to the facts, be nothing more or less than an authority to the town to tax the land to a certain distance outside of its limits, and, in effect, to take the money of the proprietor for its own use, without compensation to him." Again, he observed, in reference to some limit in the exercise of legislative discretion in the imposition of taxes, "that limit can only consist in the discrimination to be made between what may with reasonable plausibility be called a tax, and for which it may be assumed that the objects of taxation are regarded by the legislature as forming a just compensation, and that which is palpably not a tax, but is under the form of a tax, or some other form, the taking of private property for the use of others or of the public, without compensation. The case must be one in which the operation of the power will be, at first blush, pronounced to be the taking of private property without compensation, and in which it is apparent that the burthen is imposed without any view to the interest of the individual in the objects to be accomplished by it. If it be so, no matter under what form the power is professedly exercised, whether it is in the form of laying or authorizing a tax, or in the regulation of local divisions, or boundaries, which result in a subjection to local taxes; and whether the operation be to appropriate the property of one or more individuals without their consent, to the use of the general or local public, or to the use of other private individuals, or of a single individual,—the case must be regarded as coming within the prohibition contained in this

clause, or the constitution is impotent for the protection of individual rights of property from any aggression, however flagrant, which may be made upon them, provided it be done under color of some recognized power." ·

Without, however, expressing any opinion upon imaginary cases, it is sufficient for the decision of the case now before us, that the legislature can not authorize a municipal corporation to tax, for its own local purposes, lands lying beyond the corpo - rate limits ; and upon this principle, the judgment of the cir- cuit court is reversed and the cause remanded.