[No. 6,497.—In Bank.]

## PEOPLE OF THE STATE OF CALIFORNIA, EX REL., T. N. LONG, TREASURER, ETC. *v.* A. TOWNSEND, TREASURER, ETC.

CONSTITUTIONAL LAW—TAXATION—ASSESSMENT.—The Act of the Legislature of March 16th, 1874, entitled, "An Act to regulate the assessment of migratory herds or bands of live stock, and to provide for an equitable distribution of the taxes derived therefrom," is unconstitutional.

TAXATION.—To render taxation uniform, it is essential that each taxing district should confine itself to the objects of taxation within its limits; but this with the understanding that the *situs* of personal property may be the domicile of the owner.

APPEAL from a judgment for the plaintiff, in the Second District Court, County of Tehama. HUNDLEY, J.

The action was brought to obtain a writ of mandamus, commanding the defendant, as county treasurer of Tehama County, to set apart to the relator of plaintiff one-half of certain moneys claimed to have been collected by the defendant upon certain live stock, the owners of which had made statements under oath, in accordance with the provisions of the Act of March 16th, 1874, that it was their intention to drive said stock during the year into Lassen County. The relator of the plaintiff was the county treasurer of the latter county.

*Jerome Banks*, and *I. S. Belcher*, for Appellant.

The act under which this proceeding is taken is unconstitutional and void. Personal property must be assessed in the county in which its owner resides or in which it is' situated. Taxes collected upon such an assessment belong to the county making the assessment, and the Legislature has no power to direct that they be taken from the treasury of that county, and paid into the treasury of another county. To do so is to arbitrarily tax the property of one class of citizens for the benefit of another class. It is to destroy the rule of equality. and uniformity, which is necessary to all taxation. (Cooley Const. Lim. 499.) If the Legislature can direct that one-half of the taxes upon any particular property shall be taken from one county and given to another, it can direct that the whole be so taken and given.

In *Wells* v. *City of Weston*, 22 Mo. 385, the Supreme Court of Missouri deny the right of the Legislature to subject property located in one taxing district to taxation in another, upon the express ground that it is in substance the arbitrary taxation of the property of one class of citizens for the benefit of another class. The case was one where the Legislature sought to subject real estate lying outside the limits of a city to taxation for city purposes, on the theory that it received some benefit from the city government, and ought to contribute to its support.

The same principle has been affirmed in Kentucky and Iowa. (*City of Covington* v. *Southgate*, 15 Mon. B. 491; *Arbegust* v. *Louisville*, 2 Bush, 271; *Morford* v. *Unger*, 8 Iowa, 82.)

*J. S. Chapman*, and *J. W. Hendricks*, for Respondent.

It has not been claimed that the act violates any particular expressed provisions of our Constitution, but the objection is, that it is in violation of a fundamental principle of taxation; viz., that one local community cannot be taxed for the benefit of another ; that the purpose for which a tax is to be levied must be one which peculiarly pertains to the district within which it is to be collected.

A State purpose must be accomplished by State taxation, a county purpose by county taxation, etc.

We admit the rule, but deny its application to this case. (Cooley Const. Lim. 494.) And then, too, the judgment of the Legislature should not be lightly disturbed in matters of this kind.

McKINSTRY, J.:

The questions presented on this appeal involve the validity of the act entitled, " An Act to regulate the assessment of migratory herds or bands of live stock, and to provide for an equitable distribution of the taxes derived therefrom." (Stats. 1873–74, p. 376.)

The first section of the act requires, that, whenever a county assessor assesses any live stock, " he must demand of the person who gives him a list thereof a statement under oath, showing " whether such stock, or any portion thereof, " *will, during*

*the year*," be moved to another county for pasturage, and, if so, the name of the county; also, the number, kind, and value of the stock; "provided, that should such person, at the time of the assessment, not *have determined to remove such stock*," it shall be lawful subsequently to make the return by mail.

The second section provides, that, within *ten days* after making an assessment, it shall be the duty of the county assessor to transmit by mail to the treasurer of the county "to which such stock *is to be taken*" a copy of a statement, showing the number and kind of stock "*to be* removed" to such county, and its assessed value.

The fifth section is to the effect, that, on the first Monday of February in each year, the treasurer of each county to which a list has been sent must make out a demand against the county from which the list has been transmitted; the treasurer of which must pay over to the treasurer making the demand all moneys received by him for the use of the county from which the demand comes—being one-half of all the taxes received for *county purposes* as taxes upon the property listed (§ 4). We are not called on, in this case, to determine whether the benefits of taxes upon personal property might, by legislative enactment, be distributed between two counties, each of which has afforded local governmental protection during a part of the year.

It is manifest, from a reading of the statute, that the payment by the county where the tax has been collected to the county making the demand does in no degree depend upon the *fact* that the property, or the owner thereof, has even been within the county which claims half the tax. The plan provided by the act is a plan by which the officers of one county are compelled to collect taxes for the benefit of another county. If the county for whose benefit the tax is collected could not be authorized to collect the tax directly, and by its own officers, the statute must be held to be void.

The act attaches no consequence to a failure to furnish the list mentioned in the first section. In the case before us, can Lassen County collect a tax out of property, or from the owner of property, merely because the owner at one time declared that he entertained a design, never consummated, of removing

the property to Lassen? *On the recipt of a list*, sent within ten days after the assessment, the county to which the list is sent—supposing the law valid—becomes entitled to one-half of the tax paid by the property listed.

Mr. Justice Cooley, in his work on Constitutional Limitations, remarks: "Assessments upon real estate not lying within the taxing districts would be void, and assessments for personal property, made against persons not residing in the district, would also be void, unless made with reference to the actual presence of the property in such district." (Const. Lim. 500.) Both the former and present Constitutions contain provisions requiring that taxation shall be *equal* and *uniform*. But to render taxation uniform, it is essential that each taxing district should confine itself to the objects of taxation within its limits. Otherwise, there may be duplicate taxation, and consequent inequality. (Const. Lim. 499.) This, of course, is to be taken with the understanding that the *situs* of personal property may be the domicile of the owner.

"In *Wells* v. *City of Weston*, 22 Mo. 385, the Supreme Court of Missouri deny the right of the Legislature to subject property located in one taxing district to taxation in another, upon the express ground that it is in substance the arbitrary taxation of the property of one class of citizens for the benefit of another class. The case was one where the Legislature sought to subject real estate lying outside of the limits of a city to taxation for city purposes, *on the theory that it received some benefit from the city government*, and ought to contribute to its support." (Const. Lim. 500.) It will be observed, that even this pretext cannot be resorted to for the purpose of upholding the statute on which plaintiff relies. In *Wells* v. *City of Weston*, above referred to, the Supreme Court of Missouri said: "As the very purpose of instituting government is the protection of the citizen in his person and property, power to violate these rights would seem to be quite beyond the lawful authority of any government; and certainly the legislative department of this government cannot arbitrarily take the property of one citizen and give it to another, and of course cannot authorize others to do so. *   *   *   Our American governments are expressly prohibited from taking private prop-

erty, even for public use, without compensation to the owner."
( *Wells* v. *City of Weston,* 22 Mo. 388.  See also *City of Covington* v. *Southgate,* 15 Mon. B. 491; *Arbegust* v. *Louisville,* 3 Bush, 271; *Morford* v. *Unger,* 8 Iowa, 82.)

The former Constitution required that the Legislature should establish a system of county and town governments, as nearly uniform as practicable.   (Art. xi, § 4.)   In *Ex parte Wall,* 48 Cal. 279, it was held, that the words " system of town governments," used in the Constitution, were used with reference to town organizations in their general features, like those of other States where town governments had been established when the Constitution was adopted.   The county governments in this State have had conferred upon them by law the sovereign power of taxation—but only for county purposes.   From the very nature of the county governments, and the purposes for which the power of taxation is conferred upon them, the grant is limited in such manner as that it cannot be employed in levying taxes upon property without the territory of the county, when the owner is not within the jurisdiction.   The duties of the county government, and of the citizens subject to it, are reciprocal.   The one furnishes protection with respect to such matters as are under its control, the other pays his just tax for the support of the local government which furnishes him, or his property, the protection.   The county government has no power, and the Legislature cannot confer upon it any power to levy or collect a tax upon persons or property to whom or which it extends none of the benefits to dispense which it is organized.

The "Act to regulate the assessment of migratory herds," etc., is violative of the Constitution of 1849, and void.

1. It conflicts with the provision: " Taxation shall be equal and uniform throughout the State.   All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law, but assessors and collectors of town, county, and State taxes shall be elected," etc.   (Art. xi, § 13.)   This provision, as applied to counties, includes the manifest intention that the several counties shall receive the benefits of direct taxation, for county purposes, from all property by them taxed, proportionably to the value.   If the Legislature may deprive

the county of part of the tax derived from a particular class of property, it may dispose externally of the whole of such tax. Thus, practically, the particular class of property pays no tax to the county government, which extends to it the benefits of such government. This is clearly violative of the principles of equality and uniformity, which—as repeatedly held by the Supreme Court of this State—require that the law shall provide for the taxation of *all* property.

2. The act is in derogation of the clause in § 8 of art. i: " Nor shall private property be taken for public use, without just compensation." ( *Wells* v. *City of Weston*, 22 Mo. 385.)

3. The act conflicts with § 11 of art. i: " All laws of a general nature shall have a uniform operation."

4. By the act referred to, the county in which certain property is subject to taxation—and which alone extends its benefits to the property or its owner—is permitted to apply to its own governmental purposes but one-half of the tax collected from such property. Theoretically, too, no more money is collected by taxation for county purposes than is necessary to carry such purposes into effect. It follows, that the rate of taxation must be higher, and all other property must pay more for county purposes, when any portion or the whole of the amount collected as a tax upon particular property is transmitted to another county. From these and other like considerations, it is made manifest that the law is destructive of the symmetry of any plan of county governments, and preventive of the ends for which county governments are established. The act is in disregard of the mandate of the Constitution. "The Legislature shall establish a system of county and town governments, which shall be as nearly uniform as practicable." (Art. xi, § 4.)

Judgment reversed.

THORNTON, J., SHARPSTEIN, J., ROSS, J., MYRICK, J., and MORRISON, C. J., concurred.