H. Robert Ennis, Appellant, v. Kansas City, Albert I. Beach et al.—11 S. W. (2d) 1054.

Court en Banc, December 7, 1928.

*Johnson, Lucas & Graves* for appellant.

*John T. Barker* and *William F. Allen* for respondents; *Benjamin H. Charles* and *Carl Trauernicht* of counsel.

538

RAGLAND, J.—This case was argued and submitted with Dysart v. City of St. Louis et al., *ante* page 514. The facts and the questions raised in the two cases are parallel. The decision in the Dysart case is therefore determinative of all questions involved in this except the question of charter power; the language of the two charters with reference to the powers conferred is somewhat different.

Section 1, Article I, of the Kansas City Charter (adopted in 1925), with reference to the power granted the corporation, recites: "Subject only to the necessary extent of the limitations imposed by the constitutions and laws of the United States and the State of Missouri, it shall have power:"

Then follows an enumeration in 65 separately numbered paragraphs. In some of these the powers conferred are described in broad, general terms, while in others they are specified with great detail. Those having an immediate bearing on the question in hand are in whole, or in part, as follows:

"(8)   To acquire, receive, hold, use, manage, maintain, control, improve, and to sell, lease, mortgage, pledge or otherwise dispose of property, real or personal, and any estate or interest therein, within or without the city or State, for any public or municipal use or purpose. . . .

"(17)   To acquire, provide for, construct, regulate and maintain and do all things relating to all kinds of public buildings, structures, plants and institutions, for doing any public work or rendering any public service, markets, places, works and improvements, crematories, morgues and lighting systems.

"(36)   . . . to regulate and control the location of aviation fields, hangars and air craft landing places; to regulate and control the use of all air craft within or over the city. . . .

"(61)   To enact all needful ordinances for preserving order, securing persons or property from violence, danger and destruction, for protecting public and private property, for promoting the public health, safety, convenience, comfort, morals, prosperity and general interests and welfare, for insuring the good government of the city, and for the protection, regulation and orderly government of parks, public grounds and other public property of the city, both within and without the corporate limits of the city.

540

"(62) To exercise all powers heretofore granted to it or permitted, or which may be hereafter granted to it or permitted by law."

Section 3 of Article I provided:

"The enumeration of any particular power granted in this charter shall not be construed to limit or impair any general grant of power in this charter contained." A reading of the provisions quoted, in connection with the charter as a whole, indubitably shows that it was the purpose of the people of Kansas City to confer upon their municipality all of the powers that could possibly be delegated to a city, the limitations imposed by statutes and constitutions considered. The power to acquire and maintain an airport, being one which falls within the category of both a public and municipal purpose, as was held in Dysart v. St. Louis, supra, is therefore embraced within the general grant of power to Kansas City. The specification of the power, "to regulate and control the location of aviation fields, hangars and air craft landing places; to regulate and control the uses of all air craft within or over the city," does not under the rule of construction which the charter provides operate to limit the general power. Besides, the power to regulate and control the location of aviation fields and the uses of air craft within and over the city can no doubt be most effectively exercised through the ownership and control of an airport. We accordingly hold that Kansas City is authorized by its charter to acquire and maintain an airport, and that being so authorized it can incur an indebtedness therefor through the issuance of bonds.

As already stated, all other questions raised on this appeal were fully considered and ruled in Dysart v. City of St. Louis; and as they were decided adversely to appellant's contentions in this case it follows that the judgment below should be affirmed. It is so ordered. All concur; *Walker, J.,* in the result.