C. E. FELKER, Collector of Revenue, Scott County, Missouri, Respondent,

v.

Milton CARPENTER, Director of Revenue of the State of Missouri, Appellant.

No. 48194.

Supreme Court of Missouri,

Division No. 1.

Dec. 12, 1960.

John M. Dalton, Atty. Gen., James B. Slusher, Asst. Atty. Gen., for appellant.

J. E. Taylor, Jefferson City, for respondent.

COIL, Commissioner.

In 1955 C. E. Felker was the Collector of Revenue for Scott, a third class county, and that year collected the railroad taxes as provided in chapter 151,[1] and taxes on property owned by various companies, hereinafter called "other utility taxes," as provided by chapter 153. He paid the amounts so collected to the state after deducting and retaining $57.24 which represented one per cent of the total of each such tax. Mr. Felker claimed he was entitled to retain that amount by reason of the provisions of sections 151.280 and 153.030; section 151.280 provided for compensation of one per cent for collecting railroad taxes, and section 153.030 provided that other utility taxes should be levied and collected in

1. All chapter and section citations refer to RSMo 1949, V.A.M.S., unless otherwise noted.

the "manner" provided by law for the taxation of railroad property. Thereafter, Milton Carpenter, as the Missouri Director of Revenue, demanded that Mr. Felker pay to the state the retained amount and threatened to sue therefor on the theory that for Mr. Felker to retain the $57.24 would cause his compensation for 1955 to be in excess of his maximum allowable compensation as fixed by sections to be hereinafter noted. Thereupon, Mr. Felker brought this declaratory judgment action to determine whether he was entitled to retain the $57.24 in addition to the maximum amount of compensation provided for him for the year 1955 by the provisions of section 52.270.

The case was submitted on the facts as heretofore stated and the trial court found that Mr. Felker was entitled to retain $57.24 representing one per cent of the railroad and other utility taxes as compensation for collecting those taxes and that he properly could retain that amount irrespective of other compensation received as collector because the $57.24 was not included within but was in addition to the maximum amount of compensation allowed by section 52.270, supra. Mr. Carpenter, as the Director of Revenue, has appealed from that judgment. We have jurisdiction because a "state officer as such is a party." Art. V, § 3, Mo. Const. 1945, V.A.M.S.

Appellant concedes that by virtue of the plain provisions of section 151.280 the county collector was entitled to receive one per cent on all railroad taxes collected without seizure of personal property. (He contends that respondent was not entitled to receive any compensation for collecting other utility taxes under section 153.030.) Thus, in the first instance, the dispute between the parties is not whether the collector was entitled *to receive* one per cent for collecting railroad taxes; it is whether the collector was entitled *to retain* that one per cent when that amount caused his total

compensation to be in excess of the maximum allowable annual compensation provided in section 52.270, supra. Essentially, then, the question is whether the one per cent received by Mr. Felker for collecting railroad and other utility taxes was subject to the limitation on annual income as provided by this language in section 52.270: " * * * no collector * * * shall be allowed to retain commissions and fees in any one year in excess of the following amounts: * * * not more than five thousand five hundred dollars; and all fees and commissions coming into the hands of any collector from any source whatever in excess of the amounts herein specified * * *" shall be paid to the state as therein specified.

The answer to the question presented requires a consideration of some of the provisions of several statutes.[2] Section 52.260 which set forth the commissions certain county collectors were to receive, provided, in pertinent part:

"The collector * * * shall receive as full compensation for his services in collecting the revenue, except back taxes, the following commissions and no more:

" (1) In each county in this state wherein the whole state, county, bridge, road, school and all other local taxes, including merchants' and dramshop licenses, assessed and levied for any one year * * *."

The remainder of paragraph (1) and thirteen other numbered paragraphs provided the respective rates of commissions county collectors were to receive, depending upon the total amount of taxes and licenses levied in each year. Paragraph 13, which the parties apparently agree was applicable to the collector in this case, was:

" (13) In all counties wherein the total amount of all such taxes and licen-

2. The various statutes considered herein are those applicable to the Scott County Collector for the year 1955.

Some of the sections have since been changed.

ses levied for any one year exceeds three hundred and fifty thousand dollars and is less than two million dollars, a commission of one and one-half per cent on the first three hundred and fifty thousand dollars collected and one-half of one per cent on whatever amount may be collected over three hundred and fifty thousand dollars."

Section 52.250 was in pertinent part: "The collectors in third class counties shall receive one-half of one per cent * * * of all current taxes collected, including current delinquent taxes, exclusive of all current railroad and utility taxes collected, as compensation for mailing said statements and receipts. Said compensation shall be exclusive of and unaccountable in the maximum commissions now provided in sections 52.260 to 52.280."

Section 52.270 (Laws Mo.1955, p. 368) provided in part: "For the purpose of enabling the state auditor to determine the compensation of the collector to be paid by this state, it is hereby made the duty of the clerk of the county court, immediately after such annual settlement made by the collector, to make out and forward a statement to the state auditor, under the seal of the court, showing the aggregate of all such taxes and licenses levied for the year for which such settlement was made, including therein local, special and school and all other taxes; provided, that no collector * * * shall be allowed to retain commissions and fees in any one year in excess of the following amounts: * * * in any county coming within the provisions of section 52.260 (13), not more than five thousand five hundred dollars; and all fees and commissions coming into the hands of any collector from any source whatever in excess of the amounts herein specified, * * shall be paid into the city, county and state treasuries in proportion to the amount received on taxes collected for each; * * * provided, that the limitation on the amount to be retained as herein provided shall ap-

ply to fees and commissions on current taxes, but shall not apply to commissions on the collection of back and delinquent taxes and ditch and levee taxes, and the compensation of the county collector for the collection of levee taxes and ditch taxes, collected for drainage purposes, shall be as follows: In counties of the third class, one and one-half percent of the amount of such taxes collected; in counties of the third class where the collector of revenue is required by law to maintain a branch office, two and one-fourth percent of the amount of such taxes collected; in counties of the fourth class, two percent of the amount of such taxes collected."

Section 151.270 was in part: "County collectors shall, *at their annual settlements with the county court, also settle and account for all railroad taxes by them collected,* and shall receive credit accordingly,. * * *." (Our italics.)

Section 151.280 was in part: "The county collector shall be allowed for collecting the railroad taxes, payable out of the same, one per cent on all sums paid without seizure of personal property; * * *."

Section 153.030 was in part: "And taxes levied thereon [property owned by specified companies] shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this state, * * *." (Bracketed insert ours.)

We are of the opinion for the reasons which will appear that a reasonable construction of the foregoing sections requires the conclusion that in calculating the total received by Mr. Felker in 1955 to determine whether he had received money in excess of the maximum compensation provided by section 52.270, the one per cent he received for collecting railroad taxes under section 151.280 should have been included.

The provisions of section 52.260, supra, make it plain that the essential purpose of that section was to provide formulas to

·determine the various *rates of commissions* which various county collectors were to re·ceive. The rate of commission for a particular collector depended upon the total levy of these taxes: "state, county, bridge, road, school, and all other local taxes, including merchants' and dramshop licenses." The rates of compensation fixed by that section were those by which the collector's "full compensation for his services in collecting the revenue, except back taxes" was ·determined. It is important to note that the section did *not* provide that the collector, *for collecting the taxes mentioned in the section,* should receive certain commissions ·calculated as therein provided. We repeat, the section provided that the collector was to receive the compensation calculated as therein provided as "full compensation for his services *in collecting the revenue,* except back taxes * * *." (Our italics.) Thus, the compensation fixed by that statute was the compensation a collector was to receive for collecting *all the revenue* with one exception—back taxes.

It is significant that section 52.250, supra, ·enacted along with section 52.270 as H. B. 318, Laws of Mo.1955, p. 368, provided compensation for collectors of third and fourth class counties for mailing tax statements and receipts, and specifically referred to "current railroad and utility taxes." That reference demonstrated that even though the levy, assessment, and collection ·of railroad taxes was provided by sections in a chapter other than 52, viz., chapter 151, the legislature was, nevertheless, fully cognizant of the fact and took into account the fact when it enacted sections 52.250, 52.260, and 52.270, supra, that railroad taxes were a source of revenue and constituted revenue, and thus, must have intended that railroad taxes were a part of "the revenue" ·encompassed by the opening language of section 52.260, viz., "The collector * * * shall receive as full compensation for his services in collecting the revenue, except back taxes * * *."

An examination of section 52.270, supra, discloses that the opening language thereof was "For the purpose of enabling the state auditor to determine the *compensation of the collector* to be paid by this state" (our italics), the clerk of the county court was to forward a statement to the auditor showing the total of the taxes mentioned in section 52.260, viz., "all such taxes and licenses levied for the year * * * including therein local, special and school and all other taxes * * *." Thus, it appears, even if we assume that the phrase "all other taxes" used both in sections 52.-260 and 52.270, supra, did not include railroad taxes, that the specific taxes mentioned in section 52.260 were those upon which the collector's *rate* of compensation was based, and those mentioned in 52.270 were those which were to be included in a particular statement to be furnished by the county court to the state auditor; neither section purported to relate the specific taxes therein mentioned to the limitation on maximum income provided in section 52.270.

Another matter which it seems to us is most significant in determining the issue is the fact that section 151.270, supra, provides that the *county collectors at their annual settlements with the county court are to also settle and account for all railroad taxes collected by them.* (Section 139.160 required the collector to settle his accounts with the county court on the first Monday in March of each year.) Thus, again assuming that the words "all other taxes" contained in section 52.270 did not include railroad taxes and that, therefore, the county clerk was not to include those in the statement furnished to the auditor as provided in section 52.270, it is, nevertheless, abundantly clear that the county collector was, under section 151.270, to settle at the same annual settlement for the railroad taxes which he had collected. Surely the collection of railroad taxes, as well as the collection of the taxes specifically named in section 52.260, was a part of the collector's "services in collecting the revenue." That is to say, the determination by the state auditor of the compensation to which a particular collector was entitled was based up-

on not only the statement furnished him by the county court under section 52.270 but also upon the statement furnished by the collector as part of his annual settlement for railroad taxes as provided in section 151.-270; the one statement to the county court would reflect the collection of the taxes specifically named in section 52.260 and the other statement would reflect the railroad taxes mentioned in section 151.270. Both would constitute statements of "revenue" collected.

It seems to us, therefore, in the light of the foregoing that there can be no mistaking the meaning which the legislature intended by this language of section 52.270, supra: "provided, that no collector * * * shall be allowed to retain commissions and fees in any one year in excess of * * * five thousand five hundred dollars; and all fees and commissions coming into the hands of any collector from any source whatever in excess of the amounts herein specified * * * shall be paid into the city, county, and state treasuries in proportion to the amount received on taxes collected for each * * *." The foregoing language providing that all fees and commissions coming into the hands of any collector *from any source whatever* in excess of the compensation to collectors for collecting the revenue at the rates theretofore specified shall not be retained, is all-inclusive language of limitation, and where, as here, there is no circumstance indicating that "any source whatever" was not to include the source which produced the collector's one per cent fee or commission for collecting railroad taxes, the most reasonable conclusion is that the one per cent for collecting railroad taxes as provided in section 151.280 was part of the "fees and commissions coming into the hands of" Mr. Felker within the meaning of section 52.270.

Moreover, another provision of section 52.270, supra, specifically excluded from the limitation on the amount of maximum commissions provided therein, the compensation of a county collector for the collection of "levee taxes and ditch taxes" and addi-tional compensation was specifically provided therefor. It seems reasonable to suppose that had the legislature intended to exclude the one per cent fee allowed by section 151.280 for collecting railroad taxes from the limitation in section 52.270 on the maximum amount to be retained by collectors, it would have specifically stated that the limitation should not apply to commissions for the collection of railroad taxes, just as the legislature so stated as to levee taxes and ditch taxes.

■ We find no conflict or repugnancy, as urged by respondent, between section 151.280 which provided that county collectors shall be allowed one per cent for collecting railroad taxes and section 52.270 which provided that no collector should be allowed to retain commissions and fees in any one year in excess of stipulated amounts. Section 151.280 fixed the *rate of pay* for collecting railroad taxes, while section 52.270 limited the collector's maximum allowable annual compensation. All of the statutes to which our attention has been called as relating to the question posed by this case may be reasonably construed so that they may operate harmoniously and without conflict. See State v. Ludwig, Mo., 322 S.W.2d 841, 848[8, 9]. Inasmuch as we find no conflict or repugnancy among the statutes in question, respondent's arguments based on the premise that a conflict exists need not be noticed further.

■ Appellant also contends, as we have heretofore noted, that while respondent was entitled to have received one per cent for collecting railroad taxes, he was *not entitled to have received* any compensation for collecting other utility taxes under the provisions of section 153.030 supra.

Respondent contends that the language of section 153.030 was sufficiently broad to have provided the same compensation for collecting the taxes therein mentioned as was provided in section 151.280 for collecting railroad taxes. The language of section 153.030 relied on by respondent was this: "2. And taxes levied thereon [i e.,

on property owned by named companies] shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this state * * *." (Bracketed insert ours.)

Respondent contends that "it is unbelievable that the Legislature of 1879 intended to impose on the county collectors the same duties in regard to the collection of utility taxes that it imposed upon them in regard to the collection of railroad taxes without intending to provide the same compensation therefor." Respondent says that the legislature must have believed that the language of section 153.030 "was broad enough to adopt by reference the entire article on the taxation of railroads including the duties and compensation of the collectors." And respondent points specifically to the word "manner" as being a comprehensive term which, he says, may imply more than "method" or "mode," and argues that a statute should not be so strictly or narrowly construed as to require an officer to render service without compensation unless such a construction is required, citing 67 C.J.S. Officers § 90, p. 329.

" 'It is well-settled law that a right to compensation for the discharge of official duties is purely a creature of statute, and that the statute which is claimed to confer such right must be strictly construed.' " Ward v. Christian County, 341 Mo. 1115, 111 S.W.2d 182, 183[1]. And while it may be, as contended by respondent, that the word "manner" in certain contexts implies something more than "mode" or "method," the usual meaning of "manner" is "method" or "mode" or "way." See 26 Words and Phrases, Manner, page 537 et seq., and Manner Provided by Law, page 551.

We find no language in section 153.030, including the word "manner," which provides any compensation to collectors for collecting the taxes named in the section or which indicates that it was the intention of the legislature to provide the same compensation to the collector for collecting those taxes as was provided for collecting railroad taxes under section 151.280. Section 153.030 says that taxes levied on the property therein dealt with shall be *"levied and collected in the manner* as is now or may hereafter be provided by law for the taxation of railroad property * * *." (Our italics.) It appears that "in the manner" as there used referred to the method provided in section 151.280 for the levy and collection of railroad taxes and did not deal or purport to deal with the subject of compensation to the collector for collecting those taxes. It seems to us that to read any such implication into the language of section 153.030 would do violence to the plain meaning of the words used and would violate the rule of strict, albeit reasonable, construction of such statutes.

The judgment is reversed and the case is remanded with directions to enter a judgment in conformity with the views expressed herein.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.