AMERICAN AIRLINES, INC., a Corporation, and Delta Air Lines, Inc., a Corporation, Plaintiffs-Respondents,

v.

CITY OF ST. LOUIS, a Public Corporation, et al., Defendants-Appellants.

No. 49211.

Supreme Court of Missouri,

Division No. 1.

April 8, 1963.

Motion for Rehearing or to Transfer
to Court En Banc Denied
May 13, 1963.

Motion to Set Aside Order Denying Rehearing
or to Transfer to Court En Banc
Denied June 11, 1963.

Kerth Thies & Schreiber, Alfred H. Kerth, Clayton, Thompson Mitchell Douglas & Neill, James M. Douglas, Richard P. Conerly, W. Stanley Walch, St. Louis, for respondents, American Airlines, Inc., and Delta Air Lines, Inc.

Thomas J. Neenan, City Counselor, Thomas F. McGuire, Assoc. City Counselor, John J. Fitzgibbon, Asst. City Counselor, St. Louis, for appellant City of St. Louis.

William E. Gallagher, County Counselor of St. Louis County, Walter H. Smith, First Asst. County Counselor, Warren H. Ritchhart, Asst. County Counselor, Norman C. Parker, County Counselor of St. Louis County, Gerald J. Bamberger, Asst. County Counselor, for appellants County of St. Louis and James Frank Bell, Collector.

PAUL VAN OSDOL, Special Commissioner.

This case treats with questions of the effect and validity of Chapter 155, RSMo 1959, V.A.M.S., pertaining to the taxation of "aircraft" of an "airline company" as in Section 155.010 defined, and particularly with the effect and validity of a proviso— "provided that, when any municipality in this state owns and operates an airport outside its corporate limits, the valuation determined hereunder shall also be apportioned to said municipality"—which proviso is appended to and is a part of Section 155.050.

(All sections of the Revised Statutes of Missouri mentioned herein are RSMo 1959, V.A.M.S., except as otherwise cited.)

In this action, plaintiffs American Airlines, Inc., hereinafter referred to as "American," and Delta Air Lines, Inc., hereinafter referred to as "Delta," sought a declaratory judgment, and injunctive and other relief from taxes levied for the year 1960 by defendants City of St. Louis and St. Louis County, which levies were made on valuations of plaintiffs' aircraft as apportioned and certified to defendants, City and County, by the State Tax Commission pursuant to Section 155.050.

It was alleged by plaintiffs that the "proviso" and the whole of Chapter 155 because of the proviso were violative and in contravention of state and federal constitutional provisions.

Defendant Collector of Revenue of St. Louis County by answer and counterclaim sought recovery for the amounts of taxes allegedly due from the plaintiffs for the year 1960, together with statutory interest, penalties and other charges upon alleged delinquencies of payment on and after January 1, 1961. And it is here pertinent to add that plaintiffs instituted this action December 28, 1960, and that they, in accordance with an order entered that day, on oral motion by plaintiffs, by the Circuit Court of the City of St. Louis, paid into the registry of the Circuit Court, "pending the determination of this matter," the total amounts of the tax bills issued by the Collectors of the County and City.

The trial court found the proviso appendant to Section 155.050 invalid in its attempted apportionment of the portions of the Missouri valuations of plaintiffs' aircraft to defendant City for taxation, and enjoined the collection of the bills issued for taxes levied by City for the year 1960 and

the issuance of tax bills for subsequent years by City under Section 155.050, and ordered the amounts that had been paid by plaintiffs, respectively, into the registry of the circuit court and equivalent to the tax bills on their aircraft issued by City to be, by the circuit clerk, paid over to plaintiffs. From this finding and portion of the judgment, defendant City of St. Louis has appealed, and herein contends that the proviso and the whole of Chapter 155 are valid and that the apportionments of valuations to City pursuant to Section 155.050, including the proviso, and City's levy of taxes on plaintiffs' property, aircraft, are. lawful, reasonable, valid and constitutional.

However, the trial court found the remainder of Chapter 155 (exclusive of the proviso) to be valid, in effect declaring the validity of the bills for taxes levied by defendant St. Louis County for the year 1960 in the amounts of $18,203.54 on the aircraft of American and $8,534.32 on the aircraft of Delta. And the trial court ordered that, when this portion of the judgment becomes final, the Clerk of the Court is to pay these stated amounts to County and its Collector in satisfaction of the tax bills issued to American and Delta, respectively, on their aircraft. From this finding and portion of the judgment, plaintiffs, American and Delta, have not appealed.

The trial court found and entered judgment in favor of plaintiffs and adversely to defendant Collector of Revenue of St. Louis County on his counterclaim for statutory interest, penalties and other charges on alleged delinquencies in payment of the County taxes. And defendants St. Louis County and its Collector of Revenue have appealed from this part of the trial court's judgment and decree.

Preliminarily to our examination of the facts, and the issues raised in the two appeals, we shall set forth some other explanatory matters.

July 6, 1960, the State Tax Commission, acting under Chapter 155, particularly Section 155.040, determined the Missouri valua-

tions of plaintiffs' aircraft for 1960 in the amounts of $1,815,088 for the aircraft of American and $751,592 for the aircraft of Delta. These determinations of Missouri valuations are in review in two actions pending in the Circuit Court of the City of St. Louis (Case Nos. 30268E and 30269E). In these cases the Circuit Court by interlocutory orders enjoined the Commission from certifying Missouri valuations for 1960 in excess of $595,317 for the aircraft of American and $285,609 for the aircraft of Delta pending the final disposition of these numbered cases. The amounts the trial court in the instant case ordered paid over by the Clerk, upon final judgment to St. Louis County, $18,203.54, and $8,534.32, are the amounts of taxes levied by St. Louis County for the year 1960, on the aircraft of American and Delta, respectively, at the rate of $4.06 per $100 valuation on the State Tax Commission's assessments of the Missouri valuations as modified and reduced by the Circuit Court's interlocutory orders, and further apportioned and certified by the Commission to St. Louis County for tax levies. And the trial court in the instant case denied the prayer of defendant Collector of Revenue of St. Louis County for judgment against plaintiffs in excess of these stated amounts "without prejudice to defendant Watt's right to collect additional personal property taxes for 1960 from the plaintiffs in the event the [State Tax] Commission ever lawfully certifies increased assessed valuations against plaintiffs' aircraft." (Bracketed insert ours.)

The same amounts of apportionments of valuations for 1960 apportioned and certified to St. Louis County, $448,363 for the aircraft of American and $210,205 for the aircraft of Delta, were also certified by the Commission to the City of St. Louis for the levy of taxes pursuant to the proviso in Section 155.050.

In these connections, it is noted that although the City of St. Louis in its answer claimed, and City's Collector originally issued bills for taxes in "composite" or total

levies by City in its "dual nature" as a "city" *and* as a "county," defendant City and its Collector concede herein that City was in no event authorized to levy and collect taxes on the valuations certified to it, which levies were incident to its function as a "county."

We shall now consider the appeal of defendant City of St. Louis; and later consider the appeal of defendants St. Louis County and its Collector in another part of this opinion infra.

The City of St. Louis was by statute and charter lawfully authorized or empowered to acquire, establish, construct, own, control, lease, equip, operate, and regulate airports or landing fields for the use of airplanes and other aircraft "either within or without" the city limits as a public purpose and as a municipal charge and a municipal or city purpose. The acquisition of lands for such purpose or purposes was authorized under the power of eminent domain as and for a public necessity. The City's issuance of bonds, and its levy of taxes to retire them, in the acquisition of land and the improvement and development of the land by City for an airport or landing field was authorized as a public purpose. And the legislative body of the City was authorized to adopt regulations and establish fees or charges for the use of the airport or landing field. Sections 305.170, 305.190, and 305.210; Art. I, Secs. 8 and 9, Charter, City of St. Louis; Dysart v. St. Louis, 321 Mo. 514, 11 S.W.2d 1045, 62 A.L.R. 762; Ennis v. Kansas City, 321 Mo. 536, 11 S.W.2d 1054.

Defendant City acquired and established Lambert-St. Louis Municipal Airport (Lambert Field) in 1928. It is located in an unincorporated area in St. Louis County. City acquired land and made extensive improvements at a total cost of $23,000,000. Lambert Field is classified as a major air carrier transportation airport. Its service area is of wide radius in eastern Missouri and western Illinois, and "all over."

Plaintiffs are "airline companies" operating "aircraft" as in Section 155.010 defined, and in their airline operations their aircraft have "arrivals and departures" at Lambert Field in St. Louis County.

We have noted that by Section 155.050, exclusive of the proviso, the apportionments allocated to local taxing areas are to each county, municipal township, city, and so forth, *"in which the airline company has arrivals and departures of its aircraft."* Thus, it seems, the tangible personal property, aircraft, of an airline company was given a situs for property taxation because of its physical presence or location, however intermittent or temporary, in the territorial or corporate limits of the stated local taxing areas. However, by the proviso, a municipality (the City of St. Louis) owning and operating an airport outside its corporate limits is *also* apportioned the valuation as determined under Section 155.-050, even though neither the aircraft nor the operating airline company, by physical location or domicile, or business or corporate residence, was ever within the territorial or corporate limits of the City wherein the property, aircraft, or the airline company ordinarily could enjoy the protection and benefits which are assumed to be afforded by a taxing authority as fundamentally and essentially reciprocal to the governmental power of taxation.

■ While the legislature is vested with the power to fix the situs of property for taxation, its action must not be an arbitrary one. The power is subject to the rule of uniformity "and to the limitation that there must be some appreciable relation between the municipality exacting the tax and the person upon whom the burden is cast, either directly or by reference to the property taxed, from which there can reasonably be seen reciprocal duties to accord benefits on the one hand, and to respond therefor on the other. Whether that relation does or does not exist in any given circumstances is so conclusively a legislative question that nothing short of manifestly capricious action, amounting to a taking of property for a public use without just compensation, will

justify judicial interference." Chicago & N. W. Ry. Co. v. State, 128 Wis. 553, at pages 665–666, 108 N.W. 557, at page 589. See also Ewert v. Taylor, 38 S.D. 124, 160 N.W. 797; Wells v. Weston (1856), 22 Mo. 384; Art. I, § 10, Const., V.A.M.S.; Art. XIV, Amendments to the Constitution of the United States.

Specifically examining the proviso in its application to our case—it seems clear that the allocation of the apportionment of valuations of plaintiffs' aircraft to City was not on the theory of a situs within the City, but was on the theory of the ownership and operation of the airport by the City and the use of the airport by airline companies.

■ This brings us to the questions— what benefits or protection do American and Delta or their aircraft enjoy in using City's municipally-owned and extraterritorially-operated airport; and, whatever are those benefits or protection, are they provided by City in its governmental or in its proprietary function. These questions require a further statement of facts.

The Lambert Field installations consist of long runways designed to accommodate the large heavy aircraft of airlines; and of runways of lesser length to accommodate the aircraft of "general aviation." "Military aviation" is also accommodated. There are other improvements, buildings and facilities appropriate to use by aircraft and the public, such as administration and office buildings, hangars, parking areas, and so forth.

In operating Lambert Field, City provides services such as crash, fire and rescue; general maintenance, and operation and cleaning of runways, and necessary utilities, such as electricity, heat, and water. City pays ten private watchmen, licensed by St. Louis County, and pays St. Louis County, directly, for four St. Louis County policemen who are stationed at the airport.

City's airport manager testified that the airline companies have not paid for the airfield services "used by them in common

and exclusive with (sic) others." (By this, we assume the airline companies at most do not "directly" pay for these services.)

City's revenues at Lambert Field consist of landing fees, field-usage charges, and office and hangar rentals; and revenue from services to "consumers" such as parking lots and other concessions.

The "money" amounts of these landing fees, usage charges and rentals paid by airline companies were the subjects of negotiation, compromise and arrangement between City and the companies. The final arrangements were and are contractual. By this we mean the arrangements are said to be "lease agreements." City's airport manager testified that City had never been able to get the amount of money in fees, charges and rentals "we thought we were entitled to." The amounts or rates of fees, charges and rentals were automatically increased, under the terms of the lease agreements in 1950, 1955 and 1960. The agreements will expire in 1965—then "all bets are off." By this we assume the airport manager meant that in negotiations subsequent to the expirations, the management will insist on substantial increases in the amounts or rates of fees, charges and rentals.

Total income as compared to total expense in airport operations during the year 1960, by City's accounting, "showed a very small margin."

It has been seen that no traditional taxable situs of the aircraft for tangible personal property taxation is within the territorial or corporate limits of City; and that the proviso in Section 155.050 in effect extends the governmental taxing power of the municipality, City of St. Louis, to the imposition of the levy and collection of "municipal" taxes on tangible personal property, aircraft of airline companies, located outside the municipality's corporate limits.

What *governmental* benefit or protection does City as a municipality with powers

of local self-government supply extraterritorially to plaintiffs, airline companies, or their aircraft, which could reasonably, lawfully, and constitutionally support the extraterritorial imposition of the burden on them of City's tangible personal property taxation?

We think there is none.

Of course, the evidence shows that there are substantial services, benefits and, indeed, protection to the aircraft and the airline companies' operations, but none unlike, we suppose, those afforded by any other municipally or privately-owned, efficiently-managed, and well-regulated airport operation.

We have noted supra that by statute, Section 305.210, the legislative body of City is authorized to adopt "regulations and establish fees or charges for the use" of City's airport or landing field. It is inferred that these regulations and fees or charges are deemed by the state legislature to be essential, and necessarily incidental to City's operation of its airport; and that the fees or charges the legislative body of City is authorized to establish are, at least in theory, deemed in compensation for or in consideration of and commensurate with the services, benefits and protection assumed to be afforded to and enjoyed by the airline companies in their use of City's well-regulated and efficiently-operated municipally-owned airport or landing field.

Even though, as it was said, the airport was operated (in 1960) on a "very small margin," and whether operated on a small or large margin of profit (or loss), the amounts of the fees and charges, including rentals, were fixed by express agreements, we infer. And whether by express agreements or by agreements implied from the facts of the plaintiffs' use in tacit acceptance and payment of the fees or charges in amounts as established by the legislative body of City, we suppose it was the intent of the state legislature that the payments of the fees or charges are to be assumed

commensurate and considered as compensation for the service, benefits, and protection enjoyed by plaintiffs in their use of the airport installations. And so it is that we think it would be unreasonable to argue that plaintiffs' property may be lawfully subjected additionally and extraterritorially to levies of City's municipal tangible personal property taxes in order to erase a deficit or insure or enhance a profit in City's operation of its proprietary enterprise.

We believe it is true that the service by City in its municipally-owned airport operation is in the public interest. So is plaintiffs' service in their airline operations in carriage for hire of persons and property in air commerce. But, actually, both City's and plaintiffs' operations are commercial. And it seems the actual relationship between City and plaintiffs is contractual.

No evidence tends to support any benefit or protection to plaintiffs or their property which is provided by any governmental function of the municipality, we say.

Of course, there are benefits or protection, afforded by City in its proprietary function, in operating its airport, as we have seen. For example, the private guards and policemen, "licensed" by St. Louis County. The County is the political subdivision having local governmental powers in the area and supplies police protection governmentally. City engages, and pays the expense of this *extra* police protection so supplied governmentally by St. Louis County, and properly. The extra police protection is incidentally made necessary for the protection of all persons and property, including the persons and property of the air-traveling public, at the airport in response to all of the engagements entered into and services proffered by City in extraterritorially running its airport business.

Our conclusions are that there is no benefit or protection provided by defendant City in its municipal-governmental capacity, nor are there other fundamental bases which reasonably support the legislature's appor-

tionments of assessed valuations of plaintiffs' aircraft to defendant City for City's property taxation; that City's attempted levy and imposition of the burden of its municipal tangible personal property taxes on valuations of plaintiffs' property apportioned pursuant to the proviso of Section 155.050 are unreasonable and arbitrary; and that the proviso, and City's levies pursuant to the proviso, are invalid and void as violative of due process clauses of state and federal constitutions.

■■ As we have said supra, the trial court ruled adversely to the counterclaim of defendant Collector of Revenue of St. Louis County for statutory interest, penalties and other charges for alleged delinquencies in plaintiffs' payment of the taxes levied by the County, and County and its Collector have appealed.

In support of their contention that the trial court erred in so ruling defendants-appellants, County and its Collector, assert the court was without jurisdiction or power to stay or waive or remit or refuse to enforce these statutory exactions. They say such power is purely legislative, and no statutory authority to the courts having been provided, the trial court's exercise of the power was erroneous.

Plaintiffs-respondents, American and Delta, contend the trial court correctly denied Collector's recovery, because (1) a court of equity has the power, they say, to relieve taxpayers in meritorious circumstances; (2) the taxes assessed against respondents' property were paid into the registry of the court before the taxes were delinquent; and (3) moreover, the exactions of penalties imposed by statute in Missouri are not applicable to taxes levied on respondents' aircraft.

(1) and (2): It is the general rule that, in the absence of statutory authorization, the courts have no power to relieve delinquent taxpayers from penalties imposed by statute. The principle is not affected by the fact that the taxpayer will suffer hardship by reason of paying the penalties. Nor is the principle affected by the facts that the taxpayer is contesting in good faith the validity of the tax, and that the penalties have largely accumulated while the litigation is pending respecting the validity of the tax. 85 C.J.S. Taxation § 1031c, p. 599; 96 A.L.R. 925–937; 147 A.L.R. 142–147. Missouri is in harmony with this principle. Norborne Land Drainage Dist. Co. of Carroll County v. Cherry Valley Tp. of Carroll County, 325 Mo. 1197, 31 S.W.2d 201.

And no Missouri case has been cited in which it is held that a court in the exercise of its equitable jurisdiction or power may stay, waive or remit or refuse to enforce statutory exactions of delinquent tax penalties, although we have been reminded that this court in State ex rel. Stone v. Kansas City, Ft. S. & M. R. Co., Mo.Sup., 178 S.W. 444 (an action at law), in speaking of a delinquent tax penalty, said the court did not have the power to relieve the defendant of the penalty, nor diminish it; and in differentiating the case from the case of Cottle v. Union Pacific R. Co., 8 Cir., 201 F. 39, in which case the Circuit Court of Appeals refused to enforce a penalty, this court said, "That (the Cottle case) was a proceeding in equity; this is a suit at law. This court, in this case, must follow the statute."

And if the courts have not the power to relieve delinquent taxpayers from statutory penalty exactions, upon final judgment, we are not able to see the sound basis for the contention that statutory penalties are in effect procedurally circumvented and the legislative exactions judicially vitiated by payment, pending litigation, of the amounts of contested taxes into the registry of the court pursuant to court order entered before or after the taxes were delinquent.

In our case, the money equivalent to the taxes having been paid into court, respondents would have readily availed themselves of the money had the final judgment been favorable to them. And appellants

may avail themselves of the payment over of the money to them upon final judgment favorable to them. But in their argument urging equitable relief from delinquent tax penalties, respondents do not take into account the fact that, during the period of the pendency of the litigation, the tax money was not available for use by the taxing authority, St. Louis County. And it is apparent that respondents in paying the amounts equivalent to the taxes on their property into court were not doing so as mere stakeholders. See generally 47 C.J.S. Interest § 54, p. 66.

But assuming a Missouri court, in the exercise of its equitable jurisdiction, has the power to relieve a taxpayer from statutory delinquency penalties in the meritorious circumstances of a case, we see no meritorious or equitable ground for the exercise of a court's equitable powers in the circumstances of this case.

(3). Section 155.060 provides that taxes on aircraft of airlines shall be levied and collected in the manner provided for taxation on railroad property, and that county courts and other officials shall perform the same duties and may exercise the same powers in levying and collecting taxes on aircraft as such officials are required to perform in the levy and collection of taxes *"on railroad property."*

Section 151.220 of Chapter 151, relating to taxation of railroads, provides that the failure of any railroad company to pay taxes on the property of the company, on or before the thirty-first day of December next after the taxes have been assessed and levied, the same shall be, after that date, known and treated as delinquent railroad taxes, and the company shall forfeit and pay, in addition to the taxes, *"such penalty as is provided by law for the nonpayment of other delinquent taxes."*

Section 139.100 (applicable to penalties for delinquent taxes generally, real and personal property) provides for an additional tax, as penalty, in the "amount" as provided in Section 140.100, which amount of penalty, in addition to the amount of the tax delinquent, is *ten per cent of each year's delinquency, or one per cent per month or fraction thereof, or ten per cent annually.* The early case of Maguire v. State Savings Association (1876), 62 Mo. 344, is not now, after the enactment of the statutory predecessor of Section 139.100, and other statutory changes, to be considered authoritative in holding there is no legislative intent expressed, or implied from the statutes that the penalty in the statute, now Section 140.100, is applicable to delinquency in payment of personal property taxes.

Chapter 141 relates to delinquent taxes, class one counties, of which Sections 141.-170 to 141.200 relate to delinquent tangible personal property taxes. A class one county may subject a taxpayer to a personal judgment for delinquent taxes on tangible personal property. Section 141.170. In such actions, attorneys' fees are allowed in the amount of ten per cent on the amount of money actually collected and paid into the county treasury. And in each case, a fee of forty cents may be charged. Section 141.190.

It is provided in Section 151.280 that a county collector is allowed, for collecting ("by suit against such company") railroad taxes and, by virtue of Section 155.060, airline taxes, a fee of *two per cent of the amount collected*, to be paid as costs.

And all county collectors are allowed a commission for the collection of delinquent and back taxes by Section 52.290, of *two per cent on all sums collected*, to be added to the tax bill and paid by the party paying the tax.

Respondents remind us that appellants did not employ the procedure provided in Section 151.230 for the collection of delinquent railroad taxes by seeking the enforcement of tax liens against the property of the delinquent (railroad) taxpayer, which proceeding is required to be instituted by suit prosecuted by the prosecuting attorney of the county; and that, consequently, there

is no reasonable attorney's fee applicable and taxable as costs against respondents as provided in Section 151.240. But the suit to be prosecuted by the prosecuting attorney under Sections 151.230, 151.240—(or any other action instituted originally)—was procedurally forestalled by the instant action instituted by respondents before their taxes were delinquent and by the incidence of the effect of Supreme Court Rule 55.45 (a), V.A.M.R. And appellants were, in our opinion, obliged to state their claim for delinquent taxes and penalties by counterclaim after the taxes were delinquent. So it seems appellants sought a general judgment for delinquent taxes, interest, penalties, and other charges by counterclaim, and, we infer, appellants directed the County Counselor and his assistant to represent them in this litigation.

The counterclaim procedure employed because of the respondents' institution of their original action and by the incidence of the effect of S.C.Rule 55.45(a), supra, should be no reason, we believe, for a refusal to find respondents liable for interest, penalties, and other charges statutorily exacted.

By Section 151.240 a reasonable attorney's fee is allowed to counsel employed to aid and assist the prosecuting attorney in the statutory procedure to enforce the tax lien against railroad property provided by Section 151.230. But, say respondents, such a fee is not allowable here, and to this we agree. Nevertheless, Section 151.240 does exemplify the legislative intent that counsel fees are proper and just in actions to enforce delinquent railroad taxes. Since the delinquent taxes on respondents' aircraft are in fact delinquent taxes on tangible personal property, we think it equitable and just that attorneys' fees should be allowed and that we judicially respect the legislative admeasurement of attorneys' fees as allowed in an original action for a general judgment on a claim for delinquent taxes on tangible personalty. So we look to Section 141.190 for the amount—"the sum of *ten per cent on the amount of money actually*

*collected* and paid into the county treasury" to be taxed and collected as other costs and penalties (and not to be deducted from the tax), and to be accounted for and paid to the county treasurer.

We hold respondents liable for penalties in the amount as provided in Section 140.100 pursuant to Section 139.100; for attorneys' fees in amounts as provided in Section 141.190; for Collector's fees provided in Section 151.280; and for Collector's commissions as provided in Section 52.290.

The trial court's order, judgment and decree should be affirmed with respect to and in connection with the findings of the invalidity of the proviso and City's levy of taxes pursuant thereto. The judgment and decree should be affirmed with respect to the order of recovery by St. Louis County and its Collector of the amounts in taxes, $18,203.54 on the aircraft of American and $8,534.32 on the aircraft of Delta. The judgment and decree with respect to the denial of County Collector's counterclaim for interest, penalties, and other charges should be reversed, and a judgment should be entered in favor of defendants St. Louis County and its Collector and against plaintiffs American and Delta for penalties under Sections 139.100 and 140.100; for attorneys' fees; for Collector's fees; and Collector's commissions in amounts of percentages in accordance with this opinion, additionally to and on each of the above-stated amounts of the ordered recovery for taxes against plaintiffs American and Delta, the total amounts of the final orders of recovery and judgment to be computed and entered by the trial court as of the date of its receipt of this Court's mandate.

It is so ordered.

PER CURIAM.

The foregoing opinion by PAUL VAN OSDOL, Special Commissioner, is adopted as the opinion of the court.

All concur.

On Motion for a Rehearing or, in the Alternative, to Transfer to the
Court en Banc

PER CURIAM.

■ Having considered the motion of plaintiffs-respondents, American Airlines, Inc., and Delta Air Lines, Inc., we have come to the conclusion that our opinion should be modified with respect to the allowance to and recovery by defendants-appellants, St. Louis County and its Collector, and against plaintiffs-respondents, movants here, of the collector's fees of "two per cent on the amount" collected "by suit against such (railroad) company." Section 151.280. Such fees had been included in our original opinion and we had directed the recovery of them by defendants-appellants and against plaintiffs-respondents "by virtue of Section 155.060."

Having examined the case of Felker v. Carpenter, Mo.Sup., 340 S.W.2d 696, cited here by movants, particularly paragraph [4] of the opinion in that case (340 S.W.2d at page 701); and having re-examined Sections 155.060 and 151.280, we now have the view that the language of Section 155.060 does not inferentially make provision for and direct the collection of such a collector's fee (two per cent of the amount collected by suit against a railroad company, Section 151.280) in the case of a claim asserted in an original action or by counterclaim for a general judgment for delinquent tangible personal property taxes on the aircraft of an airline company by the collector of a class one county.

And, furthermore, we believe that, in our original opinion, we were too liberal in applying equitable principles in sustaining defendants-appellants' claim for the allowance of ten per cent pursuant to Section 141.190.

Accordingly, our original opinion is modified and changed to disallow the two per cent collector's fees and the ten per cent attorneys' fees we had in our original opinion allowed in favor of defendants-appellants and against plaintiffs-respondents, movants here. And the trial court is directed to exclude the stated fees disallowed in this modifying opinion upon computing the total amounts of final orders of recovery and judgment.

The motion for a rehearing or to transfer to Court en Banc is overruled.